542 So.2d 228 (1989)
Johnny Ray MAGEE
v.
STATE of Mississippi.
No. 58375.
Supreme Court of Mississippi.
March 22, 1989.
*229 Phillip W. Broadhead, Columbia, for appellant.
Mike Moore, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
PRATHER, Justice, for the Court:
Johnny Ray Magee, defendant below, was convicted in the Circuit Court of Marion County on robbery charges. This conviction constituted Magee's third felony offense, and he was sentenced as a habitual offender pursuant to § 99-19-83 Miss. Code Ann. (1972, as amended), to a term of life imprisonment without parole. He now perfects his appeal to this Court and assigns as error the following:
(1) Was it error for the trial court to allow identification testimony of the appellant by the State's witnesses where the identification procedures used by law enforcement were allegedly tainted?
(2) Was it error for the trial court to allow lineup identification testimony where the appellant's sixth amendment right to counsel was allegedly violated?
(3) Was it error for the trial court to allow the district attorney to peremptorily strike twelve black jurors without showing sufficient cause to overcome Batson standards?
*230 (4) Was the jury's verdict supported by the evidence?
(5) Was it error for the trial court to reduce the armed robbery indictment to robbery instead of dismissing the indictment?
(6) Was it error for the trial court to instruct the jury on accomplices, where no accomplice testimony was presented?
(7) Was it error for the trial court, in the bifurcated hearing to determine sentence, to rule that concurrent sentences meet the requirements of the habitual offender's statute, as "separate terms served"?
(8) Was it error for the trial court to find that the appellant had one crime of violence in his past in the hearing to determine sentence?
(9) Does the enhanced punishment of the habitual offender's statute (§ 99-19-83 of Miss.Code 1972, as amended) constitute cruel and unusual punishment as prohibited in the eighth amendment of the U.S. and Mississippi Constitutions?

I.
Brenda Simmons, and her husband owned Northside Package Store on Hwy. 13 in Columbia, Mississippi. On September 24, 1986, at approximately 12:30 p.m., Brenda was working inside her store when two black men walked into the store. Mrs. Simmons asked if there was anything she could do to help them and one of them asked her if the store accepted food stamps. She replied that they did not. The two men then walked to a cooler located inside the store and conversed for a moment. One of the two men turned as if to leave the building; the other man lagged behind him. The store was located in a rather small building and there were no other customers inside at the time.
The man who lagged behind suddenly slapped his hands on the counter, hollered "Now" and jumped over the counter, knocking Mrs. Simmons to the floor. She started to scream but the man stuck his hand in her mouth and said "Shut up, bitch. I'll kill you." When she tried to stand up, he knocked her down again. At this point, Mrs. Simmons was lying face down on a rug behind the counter. Mrs. Simmons heard the cash register ring, and the man holding her down told the other man to "Get it all. Get it all." Mrs. Simmons felt a hard item against her neck, which she assumed to be a gun. The man threatened her again at this point, saying "I'll kill you, white bitch."
Mrs. Simmons testified that she did not see the two men enter the store with a weapon in their hands, but that when they left the store her gun that normally was under the counter beneath the cash register was no longer there. After emptying the cash register, and grabbing other items located on the counter beneath the register, the man who had grabbed the money said "Let's go, man. Let's go. Leave her alone." The man who had held her to the ground said "I'm going to kill you anyway." At that point Mrs. Simmons testified that she braced herself for the shot. However, no bullet was ever fired, and soon thereafter she heard her front door open. Realizing that the robbers had left, she called the police, who arrived soon thereafter.
Reported stolen in the incident were Mrs. Simmons' billfold, containing several credit cards, $400 contained in a bank bag beneath the counter, a pistol which had been located underneath the counter, and approximately $275 to $335 in cash, taken from the cash register. Except for the bruises caused by being hit and shoved around, Mrs. Simmons was unharmed.
Johnny Ray Magee was indicted, and charged with armed robbery. His trial was held on February 27, 1987. Mrs. Simmons made an in-court identification of the defendant. At the conclusion of the State's case, the defense made a motion for dismissal of the armed robbery on the basis that the State had failed to prove an armed robbery. The trial judge sustained the motion as to the armed robbery charge, but ruled that the lesser included offense of robbery would withstand a motion for peremptory instruction. The defendant was directed to proceed to defend a robbery charge. The *231 defendant did not testify, but family members presented alibi testimony.
Magee was found guilty of robbery. He was then sentenced to life without parole as a habitual offender, pursuant to § 99-19-83 of Miss. Code Ann. (1972, as amended).

II.

WAS IT ERROR FOR THE TRIAL COURT TO ALLOW IDENTIFICATION TESTIMONY OF THE APPELLANT BY THE STATE'S WITNESSES WHERE THE IDENTIFICATION PROCEDURES USED BY LAW ENFORCEMENT WERE TAINTED?
Under this first assignment of error, the appellant contends that the procedures used by the police in conducting the lineups at which he was identified by the victim were tainted, thus rendering the identification testimony improper.
The robbery of Mrs. Simmons' store took place on September 24, 1986. Based on a description given the police by Mrs. Simmons, the appellant was picked up by the police at approximately 6:00 p.m. that same day. The record makes no reference whatsoever as to whether or not the appellant was ever given his Miranda rights. The next day, on September 25, at approximately 4:00 p.m. in the afternoon, the victim viewed a lineup at the Marion County jail; in this lineup was the appellant Johnny Ray Magee. The victim viewed the lineup through a glass panel in a door that was covered with a piece of paper, with a peep hole cut in the piece of paper.
While at the jail, Mrs. Simmons viewed the lineup on two occasions. She was not able to positively pick the appellant out of the lineup. She did state at the time that one of the men in the lineup looked similar to one of the robbers. The victim did not identify the appellant in any way at this time.
On the following day, September 26, several police officers went to the Northside Package Store where Mrs. Simmons was working, and showed her five photographs. Among these photographs was a picture of the Johnny Ray Magee. After examining the photographs, Mrs. Simmons picked out the appellant without any hesitation whatsoever. It is uncontradicted that the only person who appeared in both the lineup and the photographic display was Johnny Ray Magee.
Magee contends that Mrs. Simmons' in-court identification testimony was impermissibly tainted by the lineup and the photographic display by singling him out in such a manner. It is worth noting that the main focus of the appellant's challenge to the lineups is the fact that he was the only person to appear in both the lineup and the photographs; he does not appear to challenge the actual physical composition of the lineup and/or the photographs. Before the trial began, the appellant's counsel made a motion to suppress the identification testimony of Mrs. Simmons. After hearing testimony on the motion to suppress, the trial judge overruled the appellant's motion. The court found that using the "totality of the circumstances" test, there was no danger of "irreparable misidentification." The court further found that Mrs. Simmons had testified that she could identify the appellant as the person who robbed her on September 24, 1986, "based on her independent recollection of the robbery and the person who perpetrated it without any aid from lineups, pictures, etc."
This Court's scope of review for suppression hearing findings in pretrial identification cases is as follows:
The combined effect of the circuit court's pretrial and trial rulings is that of a finding of fact that, under the totality of the circumstances ... in-court identification testimony had not been impermissibly tainted. We may, of course, disturb such a finding only where there is an absence of substantial credible evidence supporting it.
Nicholson v. State, 523 So.2d 68, 71 (Miss. 1988) [quoting Ray v. State, 503 So.2d 222, 224 (Miss. 1986)]. Therefore, "this Court must determine if, in this case, there is substantial credible evidence supporting the trial judge's findings." Nicholson, supra, at 71.
*232 The most well-known set of standards for judging the reliability of lineup identification procedures is found in the U.S. Supreme Court case of Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). In that case, the Supreme Court noted the necessity for determining whether "under the `totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." 409 U.S. at 199, 93 S.Ct. at 382, 34 L.Ed.2d at 411. The Court listed five factors to be considered in evaluating the likelihood of misidentification. They are as follows:
(1) The opportunity of the witness to view the criminal at the time of the crime.
(2) The witness's degree of attention.
(3) The accuracy of the witness's prior description of the criminal.
(4) The level of certainty demonstrated by the witness at the confrontation.
(5) The length of time between the crime and the confrontation.
Id. See also York v. State, 413 So.2d 1372, 1383 (Miss. 1982).
Turning then to the facts of this case, it is helpful and necessary to apply the Biggers analysis:
(1) The opportunity of the witness to view the criminal at the time of the crime. Mrs. Simmons testified that she had three to five minutes to view the two men who came into her store and viewed them from three to four feet in a store that was only twelve feet from wall to wall. There was no testimony about bad lighting and the men did not wear masks, so it must be assumed that Mrs. Simmons had a good opportunity to view the men in question.
(2) The witness's degree of attention. When the two men walked into the store there were no other customers inside to distract Mrs. Simmons. They stopped to speak to her on their way into the store, and her attention was therefore focused on them for the rest of the time they were in the store. Mrs. Simmons was looking directly at the defendant as he came over the counter, and she testified that his face was "in [her] mind all the time." She described with particularity their clothing.
(3) The accuracy of the witness's prior description of the criminal. Immediately after the robbery, Mrs. Simmons described the man who jumped over the counter (the appellant) as being a black man approximately 5' 8" or 9", weighing about 145 to 150 pounds. In actuality, Johnny Ray Magee was 5' 11" and weighed 160 pounds. There does not appear to have been a significant difference in the description given by the victim and the actual dimensions of the appellant.
(4) The level of certainty demonstrated by the witness at the confrontation. As noted earlier, the victim could not positively identify the appellant at the first lineup, in spite of the fact that he was standing next to the person she tentatively described as being one of the robbers. At the second photographic display she unequivocally and unhesitatingly picked the appellant out from the group of pictures.
(5) The length of time between the crime and the confrontation. The first lineup took place one day after the crime took place, and the photographic display took place two days after the crime had occurred. Therefore, a very short time frame was present here.
An examination of the Biggers factors leads this Court to conclude that the only troublesome area is the fourth factor, that is the level of certainty demonstrated by the witness after the confrontation.
There are other jurisdictions holding that the lineup procedure used in the case before us was not unduly suggestive. In State v. Johnson, 306 So.2d 724 (La. 1975), the Court held: "That it is not error to have the person identified in the photographic lineup participate also in a corporeal lineup, even though he may be the only common participant in the two procedures." Id. at 726. In State v. Bey, 217 Kan. 251, 535 P.2d 881, 886-887 (1975), a similar conclusion was reached. In Bey, supra, the Court put great emphasis on the fact that the victim did not seem aware that the appellant was the only person who had appeared in both of the lineups. For a *233 discussion of similar, although not identical situations, see U.S. v. Dobson, 512 F.2d 615 (6th Cir.1975) and U.S. v. O'Neal, 496 F.2d 368 (6th Cir.1974). In O'Neal, supra, the Court noted the following:
The initial misidentification on the part of these eyewitnesses to a crime did not completely destroy the value of their testimony or render it inadmissible. The jury was fully advised of the original mistake and had it as well as the subsequent testimony identifying appellant before them to weigh. The weight to be given this evidence was for the jury to determine. Id. at 372.
During the suppression hearing, Mrs. Simmons was asked point-blank by the trial judge whether she was basing her identification testimony on her memory of the events as they transpired at the time of the robbery, or whether she was using the lineup and photographic procedures in making her identification. She stated that her identification of the appellant was based on her independent recollection of the events as they transpired on September 24, 1986.
Therefore, this Court concludes that there is ample credible evidence to support the trial court finding that there was no substantial likelihood of irreparable misidentification in that the victim "has never identified someone else and then changed, nor had she positively not identified the defendant and then later through suggestive procedures come to identify the defendant." The Court finds no merit to this assignment.

III.

WAS IT ERROR FOR THE TRIAL COURT TO ALLOW LINEUP IDENTIFICATION TESTIMONY WHERE THE APPELLANT'S SIXTH AMENDMENT RIGHT TO COUNSEL WAS VIOLATED?
Under our law a participant in a lineup has a right to have a lawyer present if the lineup is held after adversarial proceedings had been initiated against him. Jimpson v. State, 532 So.2d 985, 988 (Miss. 1988); York v. State, 413 So.2d 1372, 1383 (Miss. 1982). At the time of the lineup Magee was in custody in the sense that he was not free to leave. He was thus effectively under arrest. Floyd v. State, 500 So.2d 989, 992 (Miss. 1986). Proceedings against him had reached the point where he was entitled to an initial appearance and advice of his right to counsel. Rule 1.04 Miss. Unif.Crim.R.Cir.Ct.Prac. (1979). The right to counsel effectively attaches after arrest and at the point when the initial appearance "ought to have been held". Jimpson v. State, 532 So.2d 985, 988 (Miss. 1988); May v. State, 524 So.2d 957, 967 (Miss. 1988); Nicholson v. State, 523 So.2d 68, 77 (Miss. 1988).
Assuming arguendo that Magee's right to counsel at the lineup was violated, the point profits him nothing. Mrs. Simmons did not identify Magee at the lineup. Moreover, as we have held above, Mrs. Simmons' in-court identification testimony was not impermissibly tainted by anything that occurred at the lineup. Accordingly, the technical violation of Magee's right to counsel at his lineup becomes harmless constitutional error beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 21, 87 S.Ct. 824, 827, 17 L.Ed.2d 705, 709 (1967); Jimpson v. State, 532 So.2d at 989.
The point regarding the photographic lineup is even less meritorious. A photographic lineup is not a "critical stage". Accordingly, an accused enjoys no right to counsel in connection with a photographic lineup. Nicholson v. State, 523 So.2d 68, 71-72 (Miss. 1988); Johnson v. State, 359 So.2d 1371, 1374 (Miss. 1978); See also United States v. Ash, 413 U.S. 300, 321, 93 S.Ct. 2568, 2579, 37 L.Ed.2d 619 (1973). The assignment of error is denied.

IV.

WAS IT ERROR FOR THE TRIAL COURT TO ALLOW THE DISTRICT ATTORNEY TO PEREMPTORILY STRIKE TWELVE BLACK JURORS WITHOUT SHOWING SUFFICIENT CAUSE TO OVERCOME BATSON STANDARDS?
*234 Under this assignment of error, the appellant challenges the use of peremptory challenges to exclude black jurors under the standards enunciated in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Batson prohibits the use of peremptory challenges in a discriminatory fashion, i.e. in allowing potential black jurors to be stricken without a showing of good cause.
During jury selection in the case sub judice, no objection was ever made by the appellant to the racial composition of the jury. This Court has held specifically on more than one occasion that the failure of the appellant to raise such an objection when the jury is being impanelled serves as a procedural bar on appeal. Irving v. State, 498 So.2d 305, 317-318 (Miss. 1986); Thomas v. State, 517 So.2d 1285, 1286-1288 (Miss. 1987); Lockett v. State, 517 So.2d 1317, 1331 (Miss. 1987). It should also be noted that Batson was decided on April 30, 1986, and the trial in this case was not held until February 27, 1987. This time lapse of almost a year between the Batson decision and the trial of this case should hopefully remove the reservations expressed by the dissent in Thomas, supra, at 1288-1295. It is the opinion of this Court that this assignment of error is procedurally barred.

V.

WAS THE JURY'S VERDICT SUPPORTED BY THE EVIDENCE?
Although listed as an assignment of error, this point is not argued in any way in the appellant's briefs. This Court has traditionally held that where an assignment of error is not discussed in the briefs it is considered abandoned or waived. Taylor v. State, 435 So.2d 701, 703 (Miss. 1983); Lee v. State, 338 So.2d 395, 397 (Miss. 1976). However, it is the opinion of this Court after reviewing the record that this assignment of error is without merit.

VI.

WAS IT ERROR FOR THE TRIAL COURT TO REDUCE THE ARMED ROBBERY INDICTMENT TO ROBBERY INSTEAD OF DISMISSING THE INDICTMENT?
Again, the appellant, although listing this as an assignment of error, has totally failed to address it in his briefs. Once again however, after reviewing the record, the Court holds that the reduction of the charge to a lesser included offense was not error.

VII.

WAS IT ERROR FOR THE TRIAL COURT TO INSTRUCT THE JURY ON ACCOMPLICES, WHERE NO ACCOMPLICE TESTIMONY WAS PRESENTED?
Jury instruction S-4 which was granted by the court, reads as follows:
The court instructs the jury that an accomplice is someone who prior to or during the commission of a crime assisted, aided and abetted another person with the purpose of promoting or facilitating the commission of said crime and is charged by said act as a principal to said crime.
Therefore, if you believe from the evidence and testimony in this case beyond a reasonable doubt that on or about the 24th of September, A.D., 1986, in Marion County, Mississippi, Johnny Ray Magee assisted, aided or abetted another person before or during the commission of the crime of robbery, as defined and set out in the other instructions, with the purpose of facilitating said crime, then you shall find the defendant, Johnny Ray Magee, who is charged as a principal to said crime, guilty as charged.
The appellant objected to this charge at trial below on the grounds that "there was very little, if any, testimony presented [to support the instruction]." He also maintains that it is unfair to allow him to be charged as a principal in the case, yet also allow a jury instruction on aiding and abetting to be given. This Court disagrees.
*235 Regarding jury instructions on aiding and abetting, this Court has traditionally held that where the evidence is sufficient to support such an instruction, it is proper to grant it. Franklin v. State, 460 So.2d 104, 106 (Miss. 1984); Foley v. State, 348 So.2d 1034, 1037 (Miss. 1977). At trial, Mrs. Simmons testified at length about the details of the robbery itself, and specifically, that two men had entered the store and robbed it. After reviewing this testimony, this Court holds that the trial court did not commit error by granting an instruction on aiding and abetting. This assignment of error is rejected.

VIII.

WAS IT ERROR FOR THE TRIAL COURT, IN THE BIFURCATED HEARING TO DETERMINE SENTENCE, TO RULE THAT CONCURRENT SENTENCES MEET THE REQUIREMENTS OF THE HABITUAL OFFENDER STATUTE, AS "SEPARATE TERMS SERVED"?
Section 99-19-83 of Miss. Code Ann. (1972, as amended), reads as follows:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
In the case at bar, the proof clearly showed that the appellant had committed a house burglary on August 9, 1983 and had robbed a Piggly Wiggly food store in Columbia on August 13, 1983. On March 21, 1984, the appellant, during a single, but consolidated hearing, entered a plea of guilty as to the burglary charge in Cause No. 4005-1-2 and a separate plea of guilty to the robbery in cause No. 4006-1-2.
During the sentencing hearing for the two prior convictions, the State recommended a sentence of seven years for each charge and also recommended that the sentences be served concurrently. The judge accepted the prosecutor's recommendation. The following language is pertinent to the case:
THE COURT: I'm going to go ahead and accept your guilty plea as being freely given, your own decision to do it, and that you understand your basic constitutional rights in defense of this charge. I'm going to also accept the recommendation of the State for sentencing, and your sentence will be seven (7) years in the custody of the Department of Corrections on each of these charges, and they are to run together, but you'll have a seven (7) year sentence. I'll state in the orders that you are to get credit for all times served. How much time have you served?
THE DEFENDANT: Going on nine (9) months.
In Magee's trial for the robbery in the case sub judice, the trial judge made the following ruling:

And if I can interpret the sentence as being a seven (7) year sentence on each charge, which I feel was the intent of the trial judge when he imposed those sentences, then those two sentences, one being robbery, which was a crime of violence, and the other being burglary, a seven (7) year sentence on each, would meet the criteria under the habitual offender statute so as to allow the court to invoke the enhanced punishment if he has in fact served enough time in the Mississippi State Department of Corrections to so warrant.
(Emphasis added).
The record also clearly reflects that Magee was incarcerated in the Mississippi State Penitentiary from March 21, 1984, the day of sentencing, until he was paroled on May 14, 1986. According to the testimony of the State witness, Magee was incarcerated for a total of approximately 25 months and 23 days. The record also indicates *236 that Magee had been given credit for nine (9) months that had already been served in the county jail pending trial. Added together, Magee's total amount of time served amounted to approximately thirty-four (34) months and twenty-three (23) days in the wake of the two separate seven (7) year sentences which were to run concurrently.
Within the past year, this Court has addressed this very issue and has decided it in a manner that is directly contradictory to the appellant's position.
The question, thus, is whether serving one year or more on concurrent sentences for separate convictions amounts to serving more than one year on each sentence. We hold that it does.
Though King served his sentence for his burglary conviction concurrently with the remainder of the armed robbery sentence, the two convictions resulted from separate prosecutions arising out of separate incidents at different times. King argues that the burglary sentence lost its separate identity by being made to run concurrently with a sentence already being served. Such is not the case. Had King received a pardon on the armed robbery conviction prior to the completion of his burglary sentence, the burglary sentence would not also have ended. King merely served a part of each of his separate sentences at the same time.
King v. State, 527 So.2d 641, 645 (Miss. 1988). See also Jackson v. State, 518 So.2d 1219, 1220 (Miss. 1988).
Thus, this issue has been decided directly contradictory to the appellant's position. Therefore, this Court holds that there is no merit to this claim.

IX.

WAS IT ERROR FOR THE TRIAL COURT TO FIND THAT THE DEFENDANT HAD ONE CRIME OF VIOLENCE IN HIS PAST IN THE HEARING TO DETERMINE SENTENCE?
Under this assignment of error, Magee contends that it was improper for the trial judge to find that he had a crime of violence in his background pursuant to § 99-19-83, Miss. Code Ann. (1972, as amended). He contends that neither of his previous convictions constitute a crime of violence. This Court disagrees.
Under § 97-3-73 Miss. Code Ann. (1972, as amended), robbery is defined as follows:
Every person who shall feloniously take the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediately injury to his person, shall be guilty of robbery.
(Emphasis added). As noted earlier, it was clearly shown at trial that Magee had indeed been convicted of robbery.
Recently this Court addressed the issue of whether robbery constituted a crime of violence and once again the issue was decided contrary to the appellant's position. In Ashley v. State, 538 So.2d 1181 (Miss. 1989) this Court recited the definition of robbery under § 97-3-73, and reading it in conjunction with the statute on attempts, in § 97-1-7 of Miss. Code Ann. (1972) held that "we may only hold that attempted robbery is a crime of violence." (At 1185). Having already held that attempted robbery must be considered a crime of violence, it seems only logical to assume that an actual successful robbery is a crime of violence as well. See also McQueen v. State, 473 So.2d 971, 972-973 (Miss. 1985). Therefore, this Court holds that this assignment of error must fail.

X.

DOES THE ENHANCED PUNISHMENT OF THE HABITUAL OFFENDER'S STATUTE (§ 99-19-83 OF MISS. CODE OF 1972, AS AMENDED) CONSTITUTE CRUEL AND UNUSUAL PUNISHMENT AS PROHIBITED IN THE EIGHTH AMENDMENT OF THE U.S. AND MISSISSIPPI CONSTITUTIONS?
Under his final assignment of error, Magee argues that the sentencing of an habitual criminal to life imprisonment without parole constitutes cruel and unusual punishment. He further reasons *237 that "a life sentence without parole is tantamount to a more severe punishment than death in that the individual languishes in prison without any hope of future."
This argument has already been addressed and rejected by this Court in Baker v. State, 394 So.2d 1376 (Miss. 1981). In that case, the Court held: "Therefore, we hold that § 99-19-83 is constitutional as written and as applied to the present case." Id. at 1379. This Court has also held that § 99-19-81 of the habitual offender law does not violate the prohibition against cruel and unusual punishment. See Bridges v. State, 482 So.2d 1139 (Miss. 1986); Adams v. State, 410 So.2d 1332 (Miss. 1982). There is no merit to this assignment of error.

XI.
For the foregoing reasons it is the opinion of this Court that the conviction and sentence of Johnny Ray Magee be affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.
PITTMAN, J., not participating.