602 So.2d 1180 (1992)
John Randall ALEXANDER
v.
STATE of Mississippi.
No. 89-KA-1268.
Supreme Court of Mississippi.
June 10, 1992.
Alvin M. Binder, Binder Milner & Milner, Randall Harris, Jackson, for appellant.
Michael C. Moore, Atty. Gen., John R. Henry, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and McRAE, JJ.
PRATHER, Justice, for the Court:

I. INTRODUCTION
In this case, John Randall Alexander appeals from a murder conviction in the Panola County Circuit Court. This Court affirms.

A. The Facts
The following statement of facts is recited in a light most favorable to the verdict.
On July 14, 1987, four friends  17-year-old Robert "Neil" Smith, 18-year-old Andrew "Andy" Byars, 23-year-old John Randall "Randy" Alexander, and 19-year-old Gregory "Todd" Knight  cruised around Panola County in Randy's car. As they cruised, they drank beer and smoked marijuana. At one point, they stopped at a bar, played pool, and drank more beer. They left the bar at closing time, around 12:15 a.m., and drove to Enid Dam near Pope. They stopped at the Dam and "messed around" on a nearby pier. After a short while, one of the guys decided he wanted to go home. But Randy informed them he wasn't going to take them home unless someone gave him some "gas money." As Todd recounted: "[We lived pretty far away, but] Randy's dad lived [only] *1181 two miles down the road, so, you know, we was going to have to walk."
They argued for a while over Randy's ultimatum; in the end, no one gave him any gas money. So Andy, Todd, and Neil started to walk home. Eventually, Randy drove by them and decided to stop and pick them up. They drove to nearby Benson's Grocery Store and parked. At Benson's, they resumed their argument over Randy's demand for gas money. Neil offered $3.00, but Randy wanted $5.00. Neil refused to give Randy more than $3.00 because he had already spent too much money; for example, he had given Randy $10.00 for gas earlier in the evening and had bought the beer and some marijuana for everyone. Neil spent a lot of money on everyone because he had just received his paycheck  which he cashed  and the others were essentially broke and relying on him to subsidize their fun and frolic.
They continued to argue over gas money until Neil finally "threw up his hands" and decided to walk home. Randy then drove Andy and Todd home  leaving Neil behind at Benson's.[1] They arrived at Todd's home in Batesville at approximately 2:30 a.m. Randy dropped both Todd and Andy off (Andy spent the night at Todd's home) and then drove away. Todd and Andy felt bad about leaving Neil behind. According to Andy:
Todd woke his mama up and tried to get her car, you know, so we could go back and pick up Neil but she knew we'd been drinking and were drunk, you know, so she didn't let us do it, so we went to sleep.
At approximately 6:30 a.m., the Mississippi Highway Patrol received a report that a dead man had been found lying face down along side Highway 51 just south of Pope. Investigators identified the dead man as Robert "Neil" Smith who, they concluded, "definitely was struck by a vehicle."[2] Dr. Steven Hayne, the pathologist who conducted the autopsy on Neil, corroborated the investigators' conclusion:
[Neil had] multiple injuries, predominately bruising and tearing of the skin. He also had an imprint of a tire across the small of his right back and he had an unusual linear, that is a straight line contusion or bruise, with a small laceration or tear in his right shoulder that had left a distinct imprint.
The investigators quickly learned that Randy, Todd, and Andy had been with Neil prior to his death. The investigators seized Randy's car, but a search of it revealed no incriminating evidence  except that "it appeared ... it had been washed." The record seems to indicate that the investigation uncovered few clues as to who killed Neil. Approximately one year passed before investigators got their break in the case.
In May 1988, Randy made a tearful and somber confession to three friends: Scott Tucker, Theresa Tucker (Scott's wife), and Roger Golden. Theresa recounted what Randy confessed:
He said that  Randy said that they [Randy and Neil] got to fighting, arguing, and he said that some how or another that he hit him [on his back] with a jack and then ran over him and then picked his head up and put a carton of cigarettes up under it.
Theresa added that Randy "said he woke up [on the morning of Neil's death]. [H]e said he couldn't eat or sleep and that he just  he vomited." Scott Tucker and Roger Golden corroborated Theresa's testimony.
Investigators eventually arrested Randy and, in September 1988, the Panola County Grand Jury indicted him for Neil's murder. After a trial at the Panola County Circuit Court, a jury found Randy guilty  after which he received a life sentence. Randy filed a motion for a new trial; the judge denied the motion; and Randy appealed.

*1182 B. The Issues

Randy presented three issues for analysis:
1. WHETHER STATEMENTS MADE BY THE PROSECUTOR DURING THE CLOSING STATEMENT INDIVIDUALLY AND CUMULATIVELY PREJUDICED RANDY TO SUCH A DEGREE THAT SUCH COULD NOT BE CURED BY FURTHER INSTRUCTIONS OF THE COURT?
2. WHETHER THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
3. WHETHER THE LOWER COURT ERRED IN FAILING TO GRANT A CONTINUANCE SO THAT A MATERIAL DEFENSE WITNESS COULD BE BROUGHT BEFORE THE COURT?

II. ANALYSIS

A. Issue: Whether the Prosecutor's Closing Comments Were Reversible Error?

1. Prosecutor's Comments and Parties' Contentions
Randy contends through this issue that the prosecutor violated his constitutional rights when he uttered allegedly improper and prejudical closing comments. The first comment referred to the minimal amount of money which investigators found on or near the victim's body. The prosecutor seems to have been inferring that Randy may have murdered Neil Smith for money.
What do we know? We know four young people went to Grenada and one of them had money. Neil had money. David Bryan said Neil had been paid that day, got $125.00... . Now, on the way home, who wanted money from Neil? ... [A]ll the evidence indicates that Randy wanted money from Neil [allegedly for gas]. And Randy gets mad [because Neil at first refuses]... . Neil [then] offers him $3.00 so we know Neil has at least $3.00. Randy wants $5.00. You can deduce from your own common sense that Randy knows that Neil has at least $5.00 because Randy wants it. The point being that Randy wants the money. That is the point. Exhibit No. 11 shows you the only money recovered at or near the body of Neil Smith  see these few coins there? That's all the money that was recovered from the body of Neil Smith.
Rec. Vol. IV, at 413-14. Upon objection by Randy, the trial judge admonished the jury to disregard the comments.
Later, the prosecutor again commented on the minimal amount of money found on or near the victim's body and the inference which one can deduce from such evidence:
Common sense. A logical deductible inference from the facts in this case. Whoever killed Neil Smith, took those dollar bills.
Randy again objected, and the judge again admonished the jury to disregard the comments.
Finally, Randy objected to the prosecutor's comment that Randy washed his car shortly after Neil's death. The judge sustained the objection and admonished the jury to disregard the remark.
Randy now contends that, "despite the sustaining of the objections and admonishments to the jury to disregard same, the prejudice ... was insurmountable." Appellant's Brief at 5.
The State of course disagrees and counters: (1) that the comments were not improper because they were "based upon the evidence or reasonable inferences therefrom"; and (2) that assuming the comments were improper, the judge's admonishments were wholly sufficient to cure any prejudicial effect.

2. Relevant Law
Case law unequivocally holds that the trial judge "is in the best position for determining the prejudicial effect" of an objectionable comment. See, e.g., Alexander v. State, 520 So.2d 127, 131 (Miss. 1988). Thus, the judge is vested with discretion to determine whether the comment is so prejudicial that a mistrial should be declared. Edmond v. State, 312 So.2d 702, 708 (Miss. 1975). Where "serious and irreparable damage" has not resulted, the judge should *1183 "cure" or remedy the situation by "admonish[ing] the jury then and there to disregard the improp[riety]." Johnson v. State, 477 So.2d 196, 210 (Miss. 1985). See also Gray v. State, 549 So.2d 1316, 1320 (Miss. 1989); Brown v. State, 534 So.2d 1019, 1024 (Miss. 1988); Estes v. State, 533 So.2d 437, 439 (Miss. 1988); Wetz v. State, 503 So.2d 803, 810 (Miss. 1987); May v. State, 460 So.2d 778, 783 (Miss. 1984); Shelby v. State, 402 So.2d 338, 340 (Miss. 1981).

3. Application of Law and Disposition
The comments were not improper. They were based upon evidence adduced at trial, and the inferences which one may deduce from such evidence are reasonable. For example, the comments regarding the minimal amount of money found on or near Neil's body suggests that robbery may have been a motive for the murder. The comment regarding the washed car suggests that Randy may have been trying to hide something (i.e., evidence of a crime).
Assuming arguendo the comments were improper, this Court concludes that the judge's admonishments cured any prejudicial effect and that the jurors disregarded the comments as instructed. Accord Roundtree v. State, 568 So.2d 1173, 1177-78 (Miss. 1990). As this Court has oft-stated: "Our criminal justice system necessarily proceeds on the premise that jurors take their responsibilities quite seriously," and this Court "presume[s] as a matter of institutional imperative that our jurors respect the law as they are instructed by the court." Middlebrook v. State, 555 So.2d 1009, 1013 (Miss. 1990); see also Shoemaker v. State, 502 So.2d 1193, 1195 (Miss. 1987); Gray v. State, 472 So.2d 409, 414 (Miss. 1985); Evans v. State, 422 So.2d 737, 744 (Miss. 1982); Clanton v. State, 279 So.2d 599, 602 (Miss. 1973).
In sum, this Court affirms on this issue. Compare with Alexander, 520 So.2d at 131 (The impropriety of the following remark was deemed cured by the judge's admonishment: "Thank God we didn't have a murder."); Crenshaw v. State, 520 So.2d 131, 134 (Miss. 1988) (The prejudicial effect of the prosecutor's closing remark through which he improperly "delv[ed] into matters concerning" other individuals was "dissipated" by the trial judge's admonishment that it be disregarded.); McFee v. State, 511 So.2d 130, 135 (Miss. 1987) (The prejudicial effect of the prosecutor's opening and closing remarks  through which he referred to the defendant as "animalistic" and explained that the "only thing that will put [the victim's] spirit to rest is to convict [the defendant]"  was deemed sufficiently dissipated by the judge's admonishment that they be disregarded.); Carleton v. State, 425 So.2d 1036, 1039 (Miss. 1983) (District Attorney's remarks  that the defense was a "flim-flam defense," that "the conditions of the penitentiary are excellent with air-conditioned buildings," and that "when you [the jury] go back [to deliberate]... you are going to find that this can be nothing but murder [for] which we have got to let people know what the people of Harrison County stand for"  were deemed harmless in view of the judge's admonishment that they be disregarded.).

B. Issue: Whether Verdict Was Against Overwhelming Weight of Evidence?

1. Parties' Contentions
Through this issue, Randy contends that the judge erroneously denied his motion for a new trial because "the verdict of the jury was against the overwhelming weight of the evidence and ... no rational juror could have found him guilty beyond a reasonable doubt." Appellant's Brief at 7.

2. Relevant Law
The law relevant to review of an overwhelming-weight issue has been amply recited:
The motion for new trial is addressed to the trial [judge's] sound discretion.
... .
A greater quantum of evidence favoring the State is necessary for the State to withstand the motion for new trial as distinguished from a motion for j.n.o.v. Under our established case law, the trial judge should set aside the jury's verdict only when, in his sound discretion, he is convinced that the verdict is contrary to *1184 the substantial [or overwhelming] weight of the evidence.
Pharr v. State, 465 So.2d 294, 301-02 (Miss. 1984); see also Williams v. State, 463 So.2d 1064, 1067-68 (Miss. 1985).

3. Application of Law and Disposition
At trial, the State presented undisputed evidence of an argument which occurred between Randy and Neil  both of whom were intoxicated. Their argument, which was over gas money, ended up with Randy leaving Neil behind to walk home. Hours later, Neil is found dead. An investigation revealed that Neil had been purposefully run over by an automobile. Moreover, the killer also may have robbed Neil since the money which Neil had received when he cashed his paycheck was missing. The investigation revealed the possibility that Randy may have washed his car shortly after Neil's death. Finally, three witnesses stepped forward to relate what Randy had tearfully confessed to them.
Randy's defense included denials by him of the allegation that he washed his car and that he confessed to anyone. Randy also presented the prior statement of a witness who had told investigators that Todd and Andy confessed to the murder. Finally, Randy presented his brother as an alibi witness.
The jury weighed the evidence, judged the credibility of the witnesses, and resolved the conflict in their testimony. The jury believed the State's version and found Randy guilty. Viewing the evidence in a light most favorable to the verdict, this Court concludes that the judge properly denied Randy's motion for a new trial. That is, the verdict is not "so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." Groseclose v. State, 440 So.2d 297, 300 (Miss. 1983) (citing Pearson v. State, 428 So.2d 1361, 1364 (Miss. 1983)).
In sum, this Court is unconvinced that the trial judge abused his discretion in denying Randy's motion for a new trial. The verdict shall therefore remain undisturbed.

C. Issue: Whether the Judge Should Have Granted a Continuance?
Randy filed a pre-trial motion seeking to declare unavailable a material witness, Melissa Jane King (also known as Melissa King Anthony). According to Randy, Melissa informed police investigators that Andy and Todd confessed to her that they, not Randy, killed Neil.
Thus, Randy sought via Mississippi Rule of Evidence 804(a)(5)[3] to introduce at trial Melissa's prior statement which would ordinarily be deemed inadmissible hearsay. The trial judge held a hearing  after which he granted Randy's motion and read Melissa's prior statement in open court before the jury.

1. Parties' Contentions
Randy now contends that the judge should have granted a continuance "so that [Melissa] could be brought to testify." A "live" witness, according to Randy, is more beneficial than the mere reading of a prior statement. Appellant's Brief at 11.
The State counters that, at the trial level, Randy did not request a continuance "so that [Melissa] could be brought to testify." According to the State, Randy merely requested that she be declared unavailable and that her prior statement be deemed admissible. Therefore, the State concludes, Randy should be procedurally barred from raising the issue for the first time on appeal. Alternatively, the State contends that Randy should be satisfied that Melissa's prior statement was read aloud: "[H]e benefitted ... in that [Melissa] was not subjected to a cross-examination. The matters related in the statement went to the jury without its maker's credibility having been tested in court." Appellee's Brief at 24-25.

*1185 2. Relevant Law

"The issue as to whether a continuance should be allowed is largely within the sound discretion of the trial judge ... and this Court will not reverse ... unless it appears that the judge has abused his discretion." Parham v. State, 229 So.2d 582, 584 (Miss. 1969); see also Johnson v. State, 511 So.2d 1360, 1364 (Miss. 1987) (holding that trial judge did not abuse his discretion by refusing to grant a continuance in the absence of an alibi witness) (citing cases).

3. Application of Law and Disposition
Thus, case law requires proof that the judge abused his discretion by failing to grant a continuance. Randy was unable to present such proof on appeal because he failed to request a continuance at the trial level. Randy merely filed a Rule 804(a)(5) motion.
In sum, this Court affirms since "[a] trial judge cannot be put in error on a matter which was not presented to him for decision." Holland v. State, 587 So.2d 848, 868 n. 18 (Miss. 1991) (quoting Pruett v. Thigpen, 665 F. Supp. 1254, 1262 (N.D.Miss. 1986)).

III. CONCLUSION
Based on the foregoing, this Court affirms.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] The facts recited up until this point are undisputed; the dispute primarily revolves around the questions of what happened after Randy drove Andy and Todd home and who killed Neil.
[2] The chief investigator, Creekmore Wright, also concluded that the killing was purposeful  not accidental.
[3] Pursuant to Rule 804(a)(5), a hearsay exception exists if a material witness is "absent from the hearing" or trial and the proponent of the witness' statement "has been unable to procure his [or her] attendance."