878 So.2d 130 (2004)
Donyale STUBBS, a/k/a Donyale Holloway, a/k/a Bean, Appellant
v.
STATE of Mississippi, Appellee.
No. 2002-KA-00399-COA.
Court of Appeals of Mississippi.
January 13, 2004.
Rehearing Denied April 13, 2004.
Certiorari Denied July 22, 2004.
*133 John R. Reeves, attorney for appellant.
Office of the Attorney General by Jean Smith Vaughan, attorney for appellee.
Before KING, P.J., IRVING, and GRIFFIS, JJ.
IRVING, J., for the Court.
¶ 1. A Lincoln County jury found Donyale Stubbs guilty of the sale of cocaine. The trial judge sentenced Stubbs to nineteen years in the custody of the Mississippi Department of Corrections. Stubbs filed the usual post-trial motion for a JNOV or, in the alternative, for a new trial. This motion was denied, and Stubbs has appealed, asserting six suggestions of error. We quote them verbatim:
1. Allowing Mississippi Bureau of Narcotics Agent Vanderslice to testify that Kevin Brothern told Vanderslice that drugs could be purchased from Donyale Stubbs is reversible error.
2. Allowing Mississippi Bureau of Narcotics Agent Vanderslice to testify that he found a lamp in Donyale Stubbs's living room which was connected to a motion sensor in the yard is reversible error.
3. Allowing Mississippi Bureau of Narcotics Agent Vanderslice to testify that he found guns in Donyale Stubbs's home is reversible error.
4. The State implied in closing argument that Donyale Stubbs is guilty because he did not testify, thereby violating his constitutional right to not testify without adverse inferences.
5. The State wrongly appealed to the fears and prejudices of the jury by implying that Kevin Brothern, its chief witness, would be harmed unless the jury convicts Stubbs.
6. The verdict is against the overwhelming weight of the evidence.
¶ 2. Discerning no reversible error, we affirm the trial court's judgment.

FACTS
¶ 3. The Southwest Narcotics Enforcement Unit enlisted Kevin Brothern, a confidential informant, to aide them in buying cocaine from Donyale Stubbs. Brothern went to Southwest Narcotics Enforcement Unit's offices in Lincoln County, Mississippi and was prepared for this operation. Brothern and his vehicle were searched. Brothern was then provided with a micro-cassette recorder, a body transmitter, and $100 in order to make the purchase.
¶ 4. When Brothern left the Southwest Narcotics Enforcement Unit's office, he drove to the trailer where Stubbs lived. Brothern was followed by Southwest Narcotics Enforcement Unit's agents. When Brothern arrived at Stubbs's home, agents traveled a half mile down the road from the trailer and listened to Brothern's actions over the body transmitter. Agents heard Brothern enter the trailer and ask for Stubbs. Agents then heard Stubbs's voice. Brothern asked Stubbs for $100 worth of cocaine. Agents heard Stubbs leave and return within minutes. The last thing that the agents heard was Brothern counting money. After the transaction, Brothern traveled to a pre-determined location to meet the agents and give them the crack cocaine that he purchased from Stubbs.
¶ 5. Later that night, Southwest Narcotics Enforcement Unit's agents got a search warrant for Stubbs's home. The agents recovered the money that was previously used to purchase the cocaine. Agents also found guns and motion lights. Additional *134 pertinent facts will be related during the discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES

1. Admissions into Evidence
¶ 6. The first five issues which Stubbs cites as error regard the admission of evidence. Stubbs argues that the trial court erroneously allowed statements of a Southwest Narcotics Enforcement Unit's agent regarding Stubbs and the subsequent search of his home. The other issues involve alleged prosecutorial misconduct by the State. We begin our analyses with the allegations of error involving the testimony of Agent Gary Vanderslice.
¶ 7. The standard of review for this Court regarding the admissibility of evidence is abuse of discretion of the trial court and reversal may be had only where that discretion has been abused. Johnston v. State, 567 So.2d 237, 238 (Miss.1990). Unless the trial judge's discretion is so abused as to be prejudicial to the accused, an appellate court will not reverse. Shearer v. State, 423 So.2d 824, 826 (Miss.1983). "A review of our case law indicates that the discretion of the trial judge runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value." Noe v. State, 616 So.2d 298, 303 (Miss.1993) (quoting Williams v. State, 544 So.2d 782, 785 (Miss.1987)). However, the discretion of the trial judge must be exercised within the boundaries of the Mississippi Rules of Evidence. Johnston, 567 So.2d at 238.
¶ 8. Stubbs's first argument of error concerns the testimony of Agent Vanderslice that Brothern informed him that drugs could be purchased from Stubbs. Stubbs explains that the statement was highly prejudicial and could have led the jury to believe the statement was true simply because Agent Vanderslice, a government agent, repeated what Brothern said to him.
¶ 9. Stubbs supports this argument of reversible error by citing McGowan v. State, 375 So.2d 987 (Miss.1979). In that case the supreme court found that "[a] witness may not repeat an out-of-court statement which names a defendant as the person from whom contraband may be purchased." Id. at 990. Stubbs also quotes case law from Ratcliff v. State, 308 So.2d 225 (Miss.1975), which held that what an informant tells officers in the course of their investigation is hearsay and is inadmissible. Id. at 227. However, we find that Ratcliff does not support Stubbs's contentions. That case goes on to explain that, "[o]ne of the well-established rules of jurisprudence in this state ... is that an accused person is entitled to be confronted with and have opportunity to cross-examine witnesses against him." Id. (citing U.S. Const. amend. VI; Miss. Const. art. 3, § 26). Therefore, we interpret the Ratcliff holding to mean that governmental officers cannot divulge the information elicited from informants if those same informants are not available for cross-examination by the defendant, for it would violate that defendant's right to confront his accusers. In our case, the informant, Brothern was available for cross-examination by Stubbs.
¶ 10. We do not hold that the out-of-court statements by informants to officers escape our hearsay rules. However, we recognize that there are some circumstances where an officer can testify at trial about information provided to him by informants. Those situations include statements explaining actions taken by an officer.

*135 In Swindle [v. State, 502 So.2d 652 (Miss.1987)] the Court found that an officer's testimony as to the substance of his conversation with an informant was offered to show the reason for the officer's presence at the scene when it stated, "an informant's tip is admissible to the extent required to show why an officer acted as he did and was at a particular place at a particular time...." It should also be noted that the Court found that the out-of-court declaration in Swindle "was not introduced for the purpose of proving the truth of the assertion ... but to show why Marshall was at the tavern on the day in question. The truth of the statement by Crenshaw to Marshall was not in issue."
Clemons v. State, 732 So.2d 883, 888(¶ 21) (Miss.1999). Thus, we find that trial judge did not commit error when he allowed Agent Vanderslice to testify that Brothern stated contraband could be purchased from Stubbs, for the statement was not introduced for the purpose of proving the truth of the matter asserted but to explain how Stubbs came under investigation by the Southwest Narcotics Enforcement Unit.
¶ 11. Next, we will combine our analysis of Stubbs's two arguments of error involving the introduction of the testimony of Agent Vanderslice regarding the motion sensor and guns which he found in Stubbs's home. Stubbs insists that this evidence was irrelevant and its probative value, if any, was outweighed by its prejudicial effect. In regards to the motion sensor, Stubbs explains that the evidence improperly allowed the jury to believe that he was a drug dealer, otherwise why would he possess a motion sensor. Stubbs also states that the motion sensors and guns make it no more or less probable that he sold cocaine to Brothern.
¶ 12. Early in Agent Vanderslice's testimony, he commented that he had been in narcotic enforcement for fifteen years and he had encountered several drug dealers. He further stated that drug dealers usually have certain items to assist them in their trade. In particular, he identified such items to include weapons, security systems, money, and vehicles. Later in his testimony, outside the jury's presence, the State informed the trial judge that it intended to question Agent Vanderslice about the security devices and weapons found in Stubbs's home. Stubbs objected to the introduction of such evidence for he argued that it was not directly related to the charge of the sale of cocaine.
¶ 13. The trial judge made the following ruling on introduction of Agent's Vanderslice's testimony relating to the security devices and weapons:
BY THE COURT: Relevant evidence is evidence that tends to prove the existence of a fact that is at issue. The fact at issue today is whether or not this defendant sold drugs. It passes muster on relevancy, and then 4.03  or it passes on relevancy based on this officer's testimony, what he said earlier, regarding the tools of the trade of a person who sells drugs. Now, under Rule 4.03 the question is whether or not the probative value is outweighed by the prejudicial nature of the evidence. It may or may not have a lot of, tremendous amount of probative value, but I don't think there would be any prejudice 
* * *
[8] BY THE COURT: The probative value  the prejudicial nature is just not that much. Many people have guns and lights, so it would not be unduly prejudicial. The probative value has been established by this officer, *136 so I will overrule the objection as to those two items.
From examination of this colloquy, it is clear that the trial judge did not abuse his discretion. The trial judge exercised his discretion within the boundaries of the Mississippi Rules of Evidence; in particular, he performed a Rule 403 balancing test and he found that Agent Vanderslice's testimony was more probative than prejudicial. See Johnston, 567 So.2d at 238; Noe, 616 So.2d at 303; Williams, 544 So.2d at 785. "The simple fact that probative evidence is prejudicial does not make it inadmissible. The prejudicial effect must substantially outweigh the probative value in order to render it inadmissible." Haddox v. State, 636 So.2d 1229, 1238 (Miss.1994). That is not the case here.

2. Prosecutorial Misconduct
¶ 14. The next issue we examine is Stubbs's assertion that the State violated his right to a fair and impartial trial by remarks it made in its closing argument. During the closing arguments, the State made the following statement: "This case turns on which witness you all believe. You heard from Gary [Vanderslice] and you heard from Kevin [Brothern]. It is your job as jurors to decide who is telling the truth and how much is the truth."
¶ 15. Stubbs argues that these arguments would be acceptable if both he and the State called separate witnesses to testify. Stubbs did not testify, nor did he call any witnesses. Thus, Stubbs explains that the State's comments, considered in the light of the fact that he did not call any defense witnesses, led the jury to believe that, since the State called three witnesses and he none, then he must have done what the State said he did.
¶ 16. Conversely, the State asserts that Stubbs did not object to the remarks and must rely on the plain error doctrine. See Watts v. State, 733 So.2d 214, 233(¶ 53) (Miss.1999). The Watts court held that "where it was alleged that the prosecutor made improper comments during both opening and closing arguments as well as while examining witnesses, but no objections were raised at trial, the defendant who fails to make a contemporaneous objection must rely on plain error to raise the assignment on appeal." Id.
¶ 17. We do not find the plain error doctrine applicable to the case sub judice. We recognize that "prosecutors are prohibited from making direct comments on the defendant's failure to testify; they are also precluded from referring to the defendant's failure to testify by innuendo and insinuation." Jones v. State, 669 So.2d 1383, 1390 (Miss.1995). However, a broad latitude is allowed to attorneys in their arguments, and it is well established that it is error to argue statements of facts which are not in the evidence or not necessarily inferable. Tubb v. State, 217 Miss. 741, 744, 64 So.2d 911, 912 (Miss.1953).
Counsel is not required to be logical in [his] argument; he is not required to draw sound conclusions, or to have a perfect argument measured by logical and rhetorical rules; his function is to draw conclusions and inferences from evidence on behalf of his client in whatever he deems proper, so long as he does not become abusive and go outside the confines of the record.
Johnson v. State, 416 So.2d 383, 391 (Miss.1982).
¶ 18. We find that the State's remarks regarding the jury's duty to weigh the testimony of Agent Vanderslice and Brothern did not violate Stubbs's right to not testify. "There is a difference between a comment on the defendant's failure to testify and a comment on the failure to put on a successful defense." Jones, 669 So.2d at 1390. "Moreover, the State is *137 entitled to comment on the lack of any defense, and such comment will not be construed as a reference to a defendant's failure to testify by innuendo and insinuation." Id. In this present matter, the State did not by innuendo, insinuation or inference violate Stubbs's Fifth Amendment right.
¶ 19. Furthermore, "[w]here serious and irreparable damage has not resulted, the judge should cure or remedy the situation by admonishing the jury then and there to disregard the impropriety." Alexander v. State, 602 So.2d 1180, 1182-1183 (Miss.1992). Assuming arguendo the comments were improper, we conclude that the trial judge's "admonishments cured any prejudicial effect and that the jurors disregarded the comments as instructed." Id. Here, the trial judge instructed the jury in jury instruction C-1 that "arguments, statements and remarks of counsel are intended to help you understand the evidence and apply the law, but are not evidence. If any argument, statement or remark has no basis in the evidence, then you should disregard that argument, statement, or remark." We presume "that jurors follow the instructions of the court. To presume otherwise would be to render the jury system inoperable." Moore v. State, 787 So.2d 1282, 1291(¶ 30) (Miss.2001). We find that the comment by the State was a reasonable argument and not improper.
¶ 20. We note that Stubbs briefly addresses his trial attorney's failure to contemporaneously object to the State's closing argument as being ineffective assistance of counsel. However, Stubbs did not argue this issue to the trial court, nor does he cite authority in support of such error. Therefore, because of Stubbs's failings in these two respects, we find this contention is procedurally barred. Crenshaw v. State, 520 So.2d 131, 134 (Miss.1988); Magee v. State, 542 So.2d 228, 234 (Miss.1989).
¶ 21. Stubbs makes another argument under the umbrella of prosecutorial misconduct. Stubbs claims that the State wrongly appealed to the fear and prejudices of the jury by implying that Brothern would be harmed unless the jury convicted Stubbs. During the direct examination of Brothern by the State, the following transpired:
BY THE STATE: How do you [Brothern] feel about testifying today?
BROTHERN: I feel kind of scared, you know, I don't feel scared about testifying, I feel scared about the after effects of it. Informants have been known to be killed, you know.
BY THE DEFENSE: Your honor, I would like to object to the and move that it be stricken. That is not relevant to this case. That is just a general opinion that he is expressing  there has been no foundation for him to 
BY THE COURT: ---Sustained. And that last comment will be stricken from the record. Ladies and gentlemen, you will disregard the last comment.
* * *
BY THE COURT: ... You [jury] will disregard the last response. If you will disregard that in your deliberations, will you please raise your hand. If you will disregard that last response, will you please raise your hand. All right. Let the record reflect that is a[sic] unanimous show of hands. Proceed.
Additionally, Stubbs alleges that the State made the inference in its closing argument that Brothern would be harmed by Stubbs if the jury did not convict Stubbs. Specifically, Stubbs asserts error as a result of the following comments:

*138 Kevin [Brothern] has to come back into the Lincoln County Community where Donyale [Stubbs] also lives after testifying against Donyale [Stubbs]. I think you all can draw your reasonable conclusions as to what that situation is like. What he could have said is Michael did it, Michael lives in Jackson, or wherever Michael is. He doesn't have to go back and face Michael. Why would he finger Donyale [Stubbs]? He's safer fingering Michael, isn't he. But he didn't. He is telling you the truth, and that  he just didn't quite have the words, he was easily confused, but that is the testimony you have heard today, and I'm telling you it is the truth. That is what happened that night.
We find no merit to Stubbs's contentions.
¶ 22. First, we note that this allegation addresses supposedly inflammatory statements by the State, and the thrust of such allegation comes from the closing argument. We will not repeat our previous analysis but point out that Stubbs did not make any contemporaneous objection and that the trial judge admonished the jury to follow the instructions of the trial court. Nevertheless, we briefly examine the contents of the allegedly inflammatory statements.
Any allegedly improper prosecutorial comment must be evaluated in context, taking into consideration the circumstances of the case when deciding the comment's propriety. The test for determining if improper argument by the prosecutor to the jury requires reversal is whether the natural and probable effect of the improper argument of the prosecuting attorney is to create an unjust prejudice against the accused as to result in a decision influenced by the prejudice so created. Prosecutors are afforded the right to argue anything in the State's closing argument presented as evidence.... Prosecutors should refrain from doing or saying anything that would tend to cause the jury to disfavor the defendant due to matters other than evidence relative to the crime.
Dancer v. State, 721 So.2d 583, 589(¶ 31) (Miss.1998). Our supreme court has held "that appealing to the fears of jurors is impermissible. An argument suggesting the `frightening' prospect of a defendant going free is likewise inappropriate." Id. at (¶ 32).
¶ 23. Stubbs cites the Dancer case to support his contention that the State's remarks were improper. In Dancer, the State, during its closing argument, asserted the following, "Ladies and gentlemen, there are no other options. Either he [Dancer] is criminally responsible for his act or he walks out the doors of this courtroom to your neighborhood." Id. at 589(¶ 28). The Dancer court found:
[T]he prosecutor was not arguing a statement of fact that was in evidence or that was even relevant to the issue before the jury  Dancer's guilt or innocence. The statement was made with the intent to frighten the jurors, and such a tactic is impermissible. Still, albeit improper the comment does not constitute reversible error. ... [T]he test to determine whether an improper argument by a prosecutor requires reversal is whether the natural and probable effect of the improper argument of the prosecuting attorney is to create an unjust prejudice against the accused as to result in a decision influenced by the prejudice so created. In Clemons v. State, 320 So.2d 368, 372 (Miss.1975), we explained that we would not withhold a reversal where prosecutorial comments are so inflammatory that in the judgment of this Court they influenced the verdict of the jury and therefore prevented a fair trial.
*139 Id. at 590 (¶¶ 33-34) (citation omitted) (emphasis added). Hence, the facts of Dancer are not analogous to the facts here.
¶ 24. We find that the prosecutor's comment was not an appeal to the fears of the jury. The State was merely making an argument to buttress the credibility of Brothern to the jury. This is demonstrated in the State's comment, "He is telling you the truth."

3. Weight and Sufficiency of the Evidence
¶ 25. Stubbs contends that the jury's verdict is against the overwhelming weight of the evidence. "In determining whether a jury's verdict is against the overwhelming weight of the evidence, [an appellate] court must accept as true the evidence which supports the verdict and will reverse only when convinced that the trial court has abused its discretion in failing to grant a new trial." Herring v. State, 691 So.2d 948, 957 (Miss.1997) (citing Thornhill v. State, 561 So.2d 1025, 1030 (Miss.1989)). "Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will [an appellate] court disturb it on appeal." Id. (citing Benson v. State, 551 So.2d 188, 193 (Miss.1989)). "Thus, the scope of review on this issue is limited in that all evidence must be construed in the light most favorable to the verdict." Id. (citing Mitchell v. State, 572 So.2d 865, 867 (Miss.1990)).
¶ 26. Stubbs criticizes the evidence presented at trial. First, he attacks Brothern's credibility by pointing out that Brothern is an admitted drug user. Second, he comments that the micro-cassette recorder that Brothern was carrying during his drug buy did not record anything. Agent Vanderslice and Brothern explained that the record button was accidently turned off. Stubbs argues that this accidental turning off the micro-cassette recorder is incredulous and unbelievable. Third, Stubbs, emphasizes Brothern's testimony that the cocaine offered at trial looked different from the cocaine he purchased from Stubbs. Fourth, Stubbs claims that there were two other people in the trailer at the time Brothern claims to have purchased the cocaine from him. Lastly, Stubbs points out that the money Brothern used to purchase the cocaine was found in Tiffany Coleman's, Stubbs's girlfriend, pockets. Thus, Stubbs concludes that the evidence was insufficient to support a guilty verdict.
¶ 27. We find that Stubbs's assertions of error regarding the weight and sufficiency of the evidence are without merit. The jury heard the evidence and found against Stubbs. We emphasize that it is the jury's duty to weigh witness credibility. Pate v. State, 419 So.2d 1324,1326 (Miss.1982). Obviously, the jury gave weight to Brothern's testimony, and we will not second-guess it. Furthermore, Stubbs's conviction does not rest on Brothern's testimony alone. Agent Vanderslice attested that he was familiar with Stubbs's voice and heard the sale transaction over Brothern's body transmitter. Agent Vanderslice explained that he first met Stubbs in 1995 and subsequently had several chances to talk to Stubbs through interviews and personal conversations. The jury determined that from the evidence presented at trial that Stubbs committed the crime of selling cocaine. This Court will not substitute its judgment for that of the jury. Without a doubt, reasonable persons could find Stubbs guilty on the evidence presented.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF LINCOLN COUNTY OF CONVICTION OF THE SALE OF COCAINE AND SENTENCE *140 OF NINETEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH THE LAST FIVE YEARS TO BE SERVED ON POST RELEASE SUPERVISION, AND FINE OF $5,000, $120 IN RESTITUTION, AND $500 IN ATTORNEY'S FEES, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LINCOLN COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.