822 So.2d 342 (2002)
Herman Lloyd BIGNER, III, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-00080-COA.
Court of Appeals of Mississippi.
July 16, 2002.
*343 Jim Davis, Moss Point, attorney for appellant.
Office of the Attorney General by John R. Henry Jr., attorney for appellee.
Before SOUTHWICK, P.J., THOMAS, and IRVING, JJ.
THOMAS, J., for the court.
¶ 1. On September 20, 1999, Herman Bigner, III received a guilty verdict of statutory rape and sexual battery and was sentenced to seven years on each count to run concurrently without the possibility of parole. Aggrieved, Bigner asserts the following issues:
I. BIGNER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
II. THE LOWER COURT ERRED IN SENTENCING BIGNER TO A TERM WITHOUT THE POSSIBILITY OF PAROLE OR PROBATION.
Finding error, we reverse and remand for a new trial.

FACTS
¶ 2. We have summarized the facts in the order of testimony presented at trial. The identity of the victim will be protected and she will be referred to as "the victim" in this opinion.

TESTIMONY OF THE VICTIM
¶ 3. The victim testified that she went to Bigner's house with Jenny and Danny on January 1, 1999. Bigner was at the house with his girlfriend, Nita, and their infant child. During the visit, Danny and Bigner snorted cocaine; Danny, Bigner, and Jenny smoked marijuana; and everyone present, excluding the infant, consumed whiskey.
*344 ¶ 4. The victim, Jenny, Danny and Bigner left the house after Nita accused the victim of "hitting on her old man." The victim and Jenny were in one truck while Danny and Bigner were in another truck. The four met at a gas station where Danny got in the truck with Jenny, leaving the victim no other choice but to join Bigner in his truck. The four left planning to meet up on Canal Road.
¶ 5. The victim began to worry when Jenny and Danny did not show up and suggested that they go look for them. At that point, Bigner held a knife to the victim's throat and ordered her to take her clothes off. The victim complied, and Bigner had intercourse with her. The victim stated that she was forced to have intercourse three or four times and perform oral sex three times. The victim further stated that Bigner ejaculated one time and that occurred during oral sex. The victim explained that Bigner did not wield the knife again after the initial threat and he told her that he had thrown it in the woods, but she knew that it was still somewhere in the truck. The victim explained that the sexual acts occurred in the cab of the truck and in the bed of the truck.
¶ 6. After an hour of sexual activity, the victim vomited on herself in the cab of the truck. Bigner had her clean it up with her sock and he threw the sock in the bed of the truck. Bigner then took the victim to a gas station to get her something to drink. When he returned to the truck with a drink, the victim begged for him to let her call someone to come and pick her up. Bigner gave her thirty-five cents and stood by the phone while she called her sister-in-law to make sure she did not tell anyone about the rape. After she made the call, Bigner left the gas station, leaving the victim alone in the parking lot.
¶ 7. Mr. Hunnicutt, the father of the victim's sister-in-law, arrived shortly thereafter to pick her up. The victim informed Mr. Hunnicutt of what had happened and he took her home. The victim then informed her sister and mother of the rape and they took her to the Gulfport Police Department.
¶ 8. The victim was then taken to the hospital and a rape test kit was conducted on her. The victim was interviewed by Officer Marty Griffin. She gave Officer Griffin a description of where Bigner lived and what kind of truck he had. The victim explained that she did not have any bruises, cuts or torn clothes because she did not fight or resist due to fear.
¶ 9. On cross-examination, trial counsel representing Bigner posed several questions as to the positioning during the sexual acts. Trial counsel also questioned the victim's inability to identify the knife that Bigner used as a threatening device, pointing out inconsistencies between her testimony on direct and what she told Officer Griffin during an interview days after the incident. The victim also repeated her testimony that she did not smoke marijuana or snort cocaine, but did drink three shots of whiskey on the day of the incident.
¶ 10. The victim also testified that she left Jenny to get in the truck with Bigner because both Danny and Jenny were in Danny's truck, leaving her no other choice due to the lack of space. The victim admitted that she could have called someone to pick her up at that point. The victim explained that after the rape occurred and while she was waiting for Mr. Hunnicutt to pick her up, she did not call the police or tell anyone in the gas station about the rape.

TESTIMONY OF HEIDI GARCIA
¶ 11. Heidi Garcia is the victim's sister-in-law. Heidi spoke with the victim when *345 she called from the gas station to have someone pick her up. Heidi testified that the victim was crying during the phone call but did not mention that she had been raped. On cross-examination, Heidi explained that she sent her father to pick the victim up because she was ill.

TESTIMONY OF GARY HUNNICUTT
¶ 12. Gary Hunnicutt, Heidi's father, testified that the victim called Heidi and asked for someone to pick her up. Hunnicutt drove to the gas station and found the victim there, crying. The victim then told Hunnicutt that she had been raped. Hunnicutt then took the victim to her mother's house and left her with her older sister.

TESTIMONY OF JEANETTE HAZELTINE
¶ 13. Jeanette Hazeltine, the victim's older sister, testified that when Hunnicutt dropped the victim off at their house she was upset and crying. The victim then informed Jeanette that she had been raped. Jeanette took the victim to find their mother, who was at the Grand Casino. After finding their mother, the three of them went to the Gulfport Police Department. Soon after they arrived at the police station, they followed instructions to go to the hospital.

TESTIMONY OF SHIRLEY JEAN ROGERS
¶ 14. Mrs. Rogers answers to the nickname "Jenny" and accompanied the victim to Bigner's house on the day of the alleged rape. Jenny testified that she drove to Bigner's house in Danny's truck with both Danny and the victim. The three of them were all traveling in Danny's truck.
¶ 15. During the visit, everyone drank whiskey and smoked marijuana. Jenny was not sure if the victim was snorting cocaine, but she knew that it was there and that Danny and Bigner were snorting it. Jenny explained that they had to leave because the victim was rubbing Bigner's leg and Nita "started going off."
¶ 16. Jenny and the victim left in Danny's truck and Danny and Bigner followed in Bigner's truck. The four of them met at a Wal-Mart gas station, where Bigner bought some gas. Danny got out of Bigner's truck and joined Jenny in his truck. Danny passed out soon thereafter.
¶ 17. When it came time to leave, Jenny asked the victim to get in the truck with them. The victim declined and indicated that she wanted to ride with Bigner. Jenny and the victim then planned to meet on Canal Road. Jenny drove to Canal Road and could not find them, so she went home.

TESTIMONY OF LOUANN O'BANNON
¶ 18. O'Bannon was the crime scene technician who conducted an inventory check on Bigner's truck on January 4, 1999. O'Bannon located a knife on the driver's side floorboard of the truck. O'Bannon also ran an ultraviolet light scan of the truck that detects body fluids and cleaning products. O'Bannon did not find traces of body fluids or cleaning products in the truck. O'Bannon also found a shirt in the truck. The owner of the shirt is unknown. O'Bannon took several photographs of the truck and the knife, all of which were entered into evidence.
¶ 19. On cross-examination, O'Bannon explained that both semen and vaginal discharge would qualify as bodily fluids that the ultraviolet light scan would detect. She did not find any trace of either semen or vaginal discharge in the truck.

TESTIMONY OF OFFICER MARTY GRIFFIN
¶ 20. Officer Griffin was the investigator who interviewed the victim on the *346 night of the alleged rape. Officer Griffin explained that the victim gave him a description of Bigner's truck and residence. Officer Griffin, accompanied by several other officers, located Bigner's house and began knocking on the door. After thirty minutes of knocking on the door, Nita answered the door. Nita gave Officer Griffin permission to enter the residence in order to look for Bigner. Officer Griffin found Bigner in one of the bedrooms and immediately placed him in custody and read him his rights. Officer Griffin stated that:
I asked him first if he knew the victim; he stated, "yes." If he had seen the victim that day; he stated, "yes." I went on to ask himI don't remember specifically. I could look at my report again, but I believe it wasI asked him if he had been with the victim earlier, at which point he told me thator if she had ever been in the vehicle. He said that no, she has never been in his vehicle. I believe that was about it.
Officer Griffin testified that Bigner's age at the time of the arrest was twenty-two.
¶ 21. On cross-examination, Officer Griffin acknowledged that his report stated that "[A]t the time of the defendant's arrest, Bigner was under the influence of alcohol and was not asked any questions." Trial counsel attempted to inquire as to the results of the rape test kit; however, an objection raised by the State was sustained.
¶ 22. The State rested after Officer Griffin's testimony. Trial counsel then made a motion for a directed verdict, which the court denied. Bigner then rested and concluding arguments were offered.

ANALYSIS

I. WAS BIGNER DENIED EFFECTIVE ASSISTANCE OF COUNSEL?
¶ 23. Bigner's claim is addressed under a two-part test established in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and followed by the Mississippi Supreme Court in Stringer v. State, 454 So.2d 468, 476 (Miss.1984). A successful completion of this test is paramount to Bigner's argument. Under Strickland and Stringer, Bigner must show that the counsel's performance was so deficient that it constituted prejudice. Strickland, 466 U.S. at 687, 104 S.Ct. 2052. The asserting party must also show that "but for his attorney's errors, there is a reasonable probability that he would have received a different result in the trial court." Rankin v. State, 636 So.2d 652, 656 (Miss.1994). The defendant bears the burden of demonstrating that both prongs have been met. Leatherwood v. State, 473 So.2d 964, 968 (Miss.1985). "Although it need not be outcome determinative in the strict sense, it [deficient assistance of counsel] must be grave enough to `undermine confidence' in the reliability of the whole proceeding." Ferguson v. State, 507 So.2d 94, 97 (Miss.1987), quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052.
¶ 24. Additionally, there is a strong but rebuttable presumption that an attorney's performance falls within a wide range of reasonable professional assistance and that the decisions made by trial counsel are strategic. Vielee v. State, 653 So.2d 920, 922 (Miss.1995). The Strickland test is applied with deference to counsel's performance, considering the totality of the circumstances to determine whether counsel's actions were both deficient and prejudicial. Conner v. State, 684 So.2d 608, 610 (Miss.1996). The test is to be applied to the overall performance of the attorney. Strickland, 466 U.S. at 695, 104 S.Ct. 2052. With respect to the overall performance of the attorney, "counsel's *347 choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy." Murray v. Maggio, 736 F.2d 279, 283 (5th Cir.1984); Cole v. State, 666 So.2d 767, 777 (Miss. 1995); Scott v. State, 742 So.2d 1190(¶ 14) (Miss.Ct.App.1999).
¶ 25. With this in mind, we now turn to Bigner's allegations of ineffectiveness of counsel. In order to address this issue in a thorough manner, we will delineate each instance that Bigner now claims contributed to his trial counsel's ineffectiveness.
¶ 26. Bigner first asserts that trial counsel made no pre-trial motions or any effort to suppress any of the evidence obtained by the police. While Bigner's original attorney made several motions as to the suppression of the evidence seized by the State, trial counsel apparently abandoned these motions when he was brought in as Bigner's trial counsel.
¶ 27. Bigner complains that only one jury instruction was submitted by trial counsel, and that instruction dealt with the chaste character of the victim, a body of law that was abandoned by this State many years ago. This jury instruction was refused by the trial court. The instruction read as follows:
Herman Lloyd Bigner, III has been charged on Count I with the offense of statutory rape of an unmarried person over fourteen and under eighteen years of age.
If you find from the evidence in this case beyond a reasonable doubt that:
1. Herman Lloyd Bigner, III, on or about January 1, 1999 in Harrison County, Mississippi
2. had carnal knowledge
3. Of an unmarried person being of previously chaste character, over fourteen and under eighteen years of age,
4. who was younger than the defendant, then you shall find the defendant guilty as charged.
If the prosecution has failed to prove any one or more of the above listed elements beyond a reasonable doubt, then you shall find Herman Lloyd Bigner, III, not guilty of Count I.
¶ 28. Bigner further points to the motion to retain jurisdiction from term to term filed by trial counsel, arguing that this is evidence of trial counsel's lack of familiarity with the rules of procedure. This motion read as follows:
Comes now the Defendant, HERMAN BIGNER, III, through his attorney, MICHAEL C. Trial counsel, and moves the Court to retain jurisdiction from term to term of the above styled and numbered cause so that Defendant's Motion for J.N.O.V., or in the Alternative, a New Trial may be heard, and in support thereof would should unto the Court as follows, to-wit:
I.
That the Defendant was found guilty after trial, and that a Motion for J.N.O.V. or in the Alternative, a New Trial, was timely filed and that the Court has not had the opportunity to hear the motion on its merits, and that the current term of Court will expire prior to the Motion being heard.
¶ 29. Bigner also complains that trial counsel failed to ask follow-up questions of potential jurors during voir dire. Bigner points to a specific juror, who answered that his niece and close friend had both been victims of rape or sexual battery. Trial counsel failed to ask this juror follow up questions as to the nature and affect of these experiences and how he might be a biased juror in the present case. Further, trial counsel did not attempt to use a *348 strike for cause or a preliminary strike to eliminate this juror, and this juror was selected and did serve as a juror in the trial.
¶ 30. Bigner also argues that trial counsel should have made a record on the jury strikes exercised by the district attorney. Not having done this, trial counsel left the race and sex of jurors absent from the appellate record and prevented a proper a review of the jury selection.
¶ 31. Bigner also complains that trial counsel failed to conduct a proper investigation and did not subpoena witnesses crucial to his defense. Bigner argues that the most blatant example of this failure to represent Bigner was trial counsel's failure to subpoena the physician who examined the victim and administered the rape test kit on the night in question. The rape test kit showed negative results. However, trial counsel did not subpoena this physician and the results of the rape test kit were never brought into evidence. The following dialogue took place after trial counsel's motion for a directed verdict at the close of the State's case was denied.
THE COURT: Are you ready to proceed?
TRIAL COUNSEL: I am, Your Honor, but I've got a problem I want to discuss with you.
THE COURT: What's that?
TRIAL COUNSEL: Yesterday afternoon at the bench, the Assistant District Attorney told you that they would call two witnesses today. They've rested now without calling one witness, that witness being Dr. Williams. You know, I haveand his is under subpoena and I was relying on him being here, given what the District Attorney told us.
I have a serological analysis wherein the rape kit was examined and all examinations were negative for semen on vaginal swabs, vaginal slides, oral swabs, oral slides, negative for panties, the boxer shorts, bra, shirt, the jeans and the sock. I don't have any way to get this in.
You know, there was an objection that was sustained when I tried to get it in through the investigator who had it. Now the doctor is not coming.
MS. FORSTER: Your Honor, if I might?
THE COURT: Do you have him under subpoena?
MS. FORSTER: Your Honor, the doctor wasn't the one who performed these tests. He doesn't even know the results. He wouldn't be able to get that in any way through the doctor. It's not part of his record. It's not part of the hospital records.
THE COURT: Who signed off on that?
MS. FORSTER: Someone from the State Crime Lab.
THE COURT: Are they under subpoena?
MS. FORSTER: I believe we issued a subpoena to them and told them that theyyou know, a week ago that we didn't need them, or longer.
THE COURT: I believe theI believe the law is well settled, that if a witness is a will call or a may call, that's up to the individuals to establish as to whether they will call, may call, or whatever. And those who are not under subpoena, the Court is not required to make available those witnesses that one side or the other may want. If one is under subpoena and is discharged by the subpoenaing party, then that's unfortunate, but that is their right.
TRIAL COUNSEL: Yes, sir. I understand.
THE COURT: Okay, sir.

*349 TRIAL COUNSEL: Defense rests.
¶ 32. Bigner argues that the jury heard repeated testimony dealing with use of marijuana, cocaine and supplying minors with alcohol, all crimes for which Bigner was not indicted. Trial counsel made no objections to this evidence of other bad acts even after a stern nudge from the judge to do so during a pre-trial conversation.
THE COURT: Okay. Before the jury is brought in, there's another matter that I think that I should at least make an observation about, that during the voir dire, I was a little bit surprised at the remark that was made by counsel for the accused in the matter of a suggestion that there will be allegations of drug use that was involved. I don't know who supposedly was using the drugs, but in any event, it's treading on pretty thin ice if there is an objection that's made on this particular matter. I don't know who is going to be offering it, but I think everybody is aware that evidence of another crime is not admissible.
MS. FORSTER: Your Honor, as to that issue, there having been no motion by the defense to exclude it and in light of the State's obligation and the case law supporting the telling of a complete story, there will be evidence submitted that the defendant and another male were using cocaine, marijuana; that there was drinking being done by all of the parties involved. And I think that in the completeness of the story, that we are allowed to submit that testimony. It may require a cautionary instruction as to other crimes, but I mean, the fact has now already been alluded to by the defense. I don't think there was any debate on their part that it was coming in.
TRIAL COUNSEL: I have no objection to all that evidence coming in, and
THE COURT: Well, I understand that you mentioned it, so I would take it that you don't have any objections to it.
Of course, the second matter that I would make this observation on the record, that I don't really understand what the relevance would be of such activity whenas far as the victim is concerned in this case, if that was an inducement of some sort. That as far as she was concerned that that's irrelevant and immaterial, because after all, this is a case that requires no consent whatsoever, whether under the influence or otherwise.
MS. FORSTER: That's correct.
THE COURT: Okay. All right. Y'all have my admonition. I guess neither side is going to object to it. I just didn't want to blunder into something here and end up in a mistrial.
¶ 33. Bigner also asserts that trial counsel should have made several hearsay objections. Bigner argues that there were several instances where State witnesses' testimony involved hearsay.
¶ 34. Bigner finally complains that trial counsel should have objected to two statements the State made during closing argument. Bigner first complains of the following comment: "And all right. Physiologically impossible? I bet people thought it was physiologically impossible to have sex in a Volkswagen Beetle, but I think we have a lot of children today as a result of the '60s that would belie that fact too." Bigner also complains of the following comment made by the State during closing argument: "And if you want to talk about holding your heads high when you go home, you want to let that man walk out back on the streets? Find him guilty."
*350 ¶ 35. The State responded to Bigner's assertion with the contention that Bigner's claim of ineffective assistance of counsel does not meet the rigorous standard set in Strickland. The State argues that if there was deficient assistance of counsel, it did not fall outside of the "trial strategy" scope, nor did it prejudice Bigner.
¶ 36. After a thorough review of the record, and keeping in mind that we must determine whether the totality of the circumstances demonstrate that trial counsel's efforts were both deficient and prejudicial, we must hold that a reversal is necessary in the case at hand. While the totality of the circumstances revealed by the record leave no doubt that trial counsel was ineffective, a handful of these instances of ineffectiveness warrant the following discussion.
¶ 37. It is apparent from a review of the record that no independent investigation of the circumstances of the case was carried out by trial counsel. It is also apparent that trial counsel relied on whatever witnesses and evidence that the State brought to trial. Our supreme court has established that such a failure to conduct a proper investigation results in ineffective assistance of counsel. Triplett v. State, 666 So.2d 1356, 1361-62 (Miss.1995); Moody v. State, 644 So.2d 451 (Miss.1994); Barnes v. State, 577 So.2d 840, 843-44 (Miss.1991); State v. Tokman, 564 So.2d 1339, 1342-43 (Miss.1990); Yarbrough v. State, 529 So.2d 659, 662 (Miss.1988); Ferguson, 507 So.2d at 95-97. Our supreme court made this explicitly clear in Tokman, where the court stated that "a common thread of the fabric of the reviewing courts' deference to tactical considerations is thorough investigation." Tokman, 564 So.2d at 1343.
¶ 38. The process of interviewing potential witnesses and issuing subpoenas in order to insure favorable testimony is a large part of the individual investigation of trial counsel in a criminal case. The Fifth Circuit has held that "at a minimum, counsel has a duty to interview potential witnesses and to make independent investigation of the facts and circumstances of the case." Nealy v. Cabana, 764 F.2d 1173, 1177 (5th Cir.1985). See also Bell v. Watkins, 692 F.2d 999, 1009 (5th Cir.1982); Rummel v. Estelle, 590 F.2d 103, 104 (5th Cir.1979). Our supreme court has also stated that:
[f]ailure of counsel to issue subpoenas even for friendly, favorable witnesses is perilous, because if for some reason the witness fails to appear, a pre-requisite for continuance is that he or she is either under process or a reasonable effort has been made to serve him or her with a subpoena. Eslick v. State, 238 Miss. 666, 119 So.2d 355 (1960); Bolin v. State, 209 Miss. 866, 48 So.2d 581 (1950)[overruled in part on other grounds]; Bone v. State, 207 Miss. 20, 41 So.2d 347 (1949). In order to be entitled to a continuance because of an absent witness, counsel must demonstrate to the court that "he has used due diligence" to secure his presence. Miss. Code Ann. § 99-15-29 (1972). Embraced therein is the requirement that counsel has made a timely effort to place the absent witness under a subpoena. Pinson v. State, 518 So.2d 1220, 1222 (Miss.1988); Watson v. State, 465 So.2d 1025, 1030 (Miss.1985); Ford v. State, 227 So.2d 454 (Miss.1969); Thigpen v. State, 206 Miss. 87, 39 So.2d 768 (1949). Having a constitutional right at no cost to himself "to have compulsory process for obtaining witnesses in his favor," Miss. Const. Art. 3, § 26, there is simply no excuse for defense counsel failing to request a subpoena for his witnesses. Counsel was derelict in failing to seek *351 pre-trial discovery and in requesting witness subpoenas.

Triplett, 666 So.2d at 1361 (emphasis added).
¶ 39. It is also shocking that the fact that trial counsel did not subpoena the party responsible for conducting the rape test kit, which showed no sign of sexual activity. The fact that trial counsel was mistaken in his presumption that Dr. Williams was the physician who examined the victim and administered the rape test kit is evidence that trial counsel did little, if any, investigation into the matter. It is obvious that trial counsel relied on the State to call the party who conducted the rape test kit as a witness. Upon finding that the State did not call this witness and had no plans to call this witness, the rape test kit was not entered into evidence. At this point, and further displaying his lack of investigation and preparation for the trial, trial counsel surrendered, resting his defense without calling one witness or entering one piece of evidence.
¶ 40. A review of the record also reveals that trial counsel made no pre-trial motions or any effort to suppress any of the evidence obtained by the police. Bigner's original attorney made several motions as to the suppression of the evidence seized by the State that are standard motions made by defense counsel in the early stages of a criminal case. However, trial counsel apparently abandoned these motions when he was appointed as counsel. Trial counsel made no mention or attempt to suppress evidence which was obtained by the police without any mention of a warrant or consent to search in the record. Nor did trial counsel seek to suppress statements made by Bigner which Bigner claims were made prior to receiving his Miranda rights. Our supreme court has held that such actions constitute deficient assistance of counsel on more than one occasion. Barnes, 577 So.2d at 843-44; Yarbrough, 529 So.2d at 662.
¶ 41. The transcript of the voir dire proceedings show that trial counsel failed to even attempt to use a strike for cause or a preliminary strike to eliminate a juror who admitted that he had a close relative and close friend who had both been victims of rape or sexual battery. Nor did trial counsel ask this juror follow up questions as to the nature and effect of these experiences and how he might be a biased juror in the present case. This juror was selected and did serve as a juror in the trial. Our supreme court has held that failure to "learn as much as circumstances and inquiry reasonably permit about every prospective juror" and "failure to challenge [the prospective juror], a juror who lived in the community where the [crime] occurred, and whose nephew had been [injured] in an incident similar to this case" resulted in deficient assistance of counsel. Triplett, 666 So.2d at 1362.
¶ 42. We also mention that an armed trooper in full uniform was also a member of the jury. Trial counsel made no mention of this trooper, nor did he attempt to utilize a strike to eliminate the trooper from the jury pool. In fact, the trooper did serve as a juror in the case. The only reason this was preserved on the record is because of a pre-trial conversation between the State, trial counsel and the court that took place immediately after the completion of voir dire. The conversation went as follows:
THE COURT: I'm going to bring up something. I really don't know how to deal with it here, that I know there was a big hoopla or a lot of hoopla up in Jackson with officers having their weapon in the courtroom. And I feel very strongly, personally, about officers, sworn officers, that they are subject to emergencies. And if I were a *352 sworn law enforcement officer, I'd find it very difficult to surrender my weapon just because of some rule of court. But the rule of court is they cannot have a weapon in the courtroom, and I don't enforce this rule when they're witnesses. But we have a juror here.
State, do you have any response to make to that as far as him wearing his weapon in the courtroom?
MS. FORSTER: No, sir. I honestly didn't notice. But seeing as how he's in uniform, I'm assuming he probably has it on.
THE COURT: Oh, he does. I saw it when he came forward. I was a little bit surprised that he would have it on him when he came in. And he does have his uniform on. Maybe he thought we were going tothat he would be excused because of that.
What do you say as to him having a weapon in the courtroom, [trial counsel]?
TRIAL COUNSEL: I think it's a real good idea. I have no objection to him having a weapon.
It is hard to imagine a lack of bias with the presence of a uniformed trooper in the jury room. The conversation listed above also indicates that the judge attempted to drop a hint to trial counsel, albeit too late for the voir dire process, that there may be a problem with having a uniformed officer as a member of the jury. This is yet but another instance illustrating the deficiency of trial counsel.
¶ 43. The record is replete with testimony dealing with use of marijuana, cocaine and supplying minors with alcohol, all crimes for which Bigner was not indicted. Trial counsel made no objections to this evidence of prior "other bad acts" even after a stern nudge from the judge to do so during a pre-trial conversation. If allowing such testimony was a tactical decision made by trial counsel, trial counsel did not understand that statutory rape is a crime that does not involve consent or reputation. Therefore, allowing such testimony was a serious mistake based on either a misunderstanding of the charge of statutory rape or the law surrounding such a charge. Either way, trial counsel was in serious error when he, himself, volunteered the information and did not object to such testimony throughout the trial.
¶ 44. During its closing argument, the State made a comment "[a]nd if you want to talk about holding your heads high when you go home, you want to let that man walk out back on the streets? Find him guilty." Trial counsel made no objection to this statement and the jury was not instructed to disregard the statement.
¶ 45. In Payton v. State, the Mississippi Supreme Court condemned the "send a message" statements made in closing arguments. Payton v. State, 785 So.2d 267, 269 (Miss.1999). In Williams v. State the Mississippi Supreme Court stated that: "jurors are representatives of the community in one sense, but they are not to vote in a representative capacity." Williams v. State, 522 So.2d 201, 209 (Miss.1988). In Forbes v. State, we clarified the issue in holding that: "it is error to urge jurors to consider that `the verdict you return is going to be reflective of the conscience of this community.'" Forbes, 771 So.2d 942, 944(¶ 27) (Miss.Ct.App.2000).
¶ 46. In the case at hand, the comment made by the State during its closing argument was very similar to those made in Payton and Williams. Trial counsel should have objected to this statement, where the judge would then "admonish the jury then and there to disregard the impropriety." Hoops v. State, 681 So.2d 521, 528 (Miss.1996). Standing alone, the failure *353 to object to this statement would not have been enough to constitute ineffective assistance of counsel. However, this is an example of one of the many instances where trial counsel failed his client.
¶ 47. Finally, trial counsel submitted only one jury instruction which dealt with chaste character of the victim, a body of law that was abandoned by this state many years ago. While this jury instruction was refused by the court, offering the instruction further illustrates the lack of preparation trial counsel made prior to the trial. Failure to submit jury instructions has also been found to be evidence of ineffective assistance of counsel. Yarbrough, 529 So.2d at 662.
¶ 48. It is true that, "counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy." Scott, 742 So.2d 1190. However, the complete failure to: file any motions, call any witnesses, enter evidence crucial to the defense and make necessary objections during the trial is not protected by the "trial strategy" exception of ineffective assistance of counsel law. Therefore, we reverse and remand for a new trial.

II. DID THE LOWER COURT ERR IN SENTENCING BIGNER TO A TERM WITHOUT THE POSSIBILITY OF PAROLE OR PROBATION?
¶ 49. During sentencing, the lower court judge mentioned Bigner's lack of possibility for parole or probation. A circuit court does not have the authority to determine parole eligibility. Brown, v. State, 731 So.2d 595, 598(¶ 7) (Miss.1999). However, the lower court in the case at hand merely stated the law in pointing out that Bigner was not eligible for parole due to the facts that he had been convicted of a sex crime and he was older than nineteen years-old. Miss.Code Ann. § 47-7-3(1)(b) (Rev.2000). Therefore, this language used was merely surplusage, and was in no way an error committed by the lower court. Gardner v. State, 514 So.2d 292 (Miss. 1987).
¶ 50. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS REVERSED AND REMANDED FOR A NEW TRIAL. THE COSTS OF THIS APPEAL ARE TO BE ASSESSED TO HARRISON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR. BRANTLEY, J., NOT PARTICIPATING.