KING, C.J.,
 

 for the Court.
 

 ¶ T. In July 2006, Virty Lee Thames was arrested as a result of his involvement in a drug buy. On January 30, 2007, Thamés was indicted by a Newton County grand jury for the sale of cocaine. A jury found Thames guilty of the sale of cocaine on August 10, 2007. Thames was sentenced to serve fifteen years in the custody of the Mississippi Department of Corrections pursuant to Mississippi Code Annotated section 41 — 29—139(a)(1) (Rev.2005).
 

 ¶ 2. Thames filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a motion for a new trial. The trial court denied Thames’s motion. Aggrieved, Thames appeals and raises the following issues: (1) the jury verdict was the result of bias and passion and was contrary to the credible evidence adduced at trial and the law of this state; (2) trial counsel’s performance amounted to ineffective assistance of counsel; and (3) Thames received an unfair trial because of cumulative errors in the investigation of this case and at trial.
 

 FACTS
 

 ¶ 3. On February 15, 2006, the Mississippi Bureau of Narcotics (MBN), conducted a controlled drug buy using a confidential informant, Donna Keel. Keel, a former drug addict, was hired to assist the MBN in building a case against Otha Wheaton, an alleged drug dealer and Thames’s employer. Keel had been used in prior cases as a confidential informant and had been beneficial to previous drug investigations.
 

 
 *1182
 
 ¶4. On the aforementioned day, MBN agents placed a concealed video and audio recorder on the counter in Keel’s trailer. The agents instructed Keel to call Whea-ton and request $100 worth of crack cocaine. Keel informed the agents that Wheaton was unable to come, but Wheaton was sending Thames. Thames was a mechanic at Wheaton’s garage. He was also a long-time drug addict and an associate of Keel. Both Keel and Thames testified that-they often had done drugs together. After the call to Wheaton, agents gave Keel five twenty-dollar bills to purchase the drugs.
 

 ¶ 5. Agents Sidney Coleman and Warren Buchanan hid in another room in the trailer while Agent Stanley Wash conducted' surveillance from his vehicle near the neighborhood of the trailer park. Subsequently, Thames arrived at Keel’s trailer. Thames walked in and handed Keel a paper towel containing crack cocaine. Keel then gave Thames the five twenty-dollar bills.
 

 ¶ 6. Keel testified that she asked Thames for a cigarette then gave him the cash. Keel testified that the cash given to Thames was received from the MBN agents. Thames then asked her for a hit, but she informed him that the crack cocaine belonged to someone else. Thames left the trailer, and Agents Coleman and' Buchanan appeared from the other room in which they had been stationed during the drug buy. Agent Coleman immediately notified Agent Wash that Thames was leaving the premises. Agent Wash testified that after Thames exited the trailer park, he followed him and copied the tag number from the vehicle that Thames was driving. An investigation later showed that the vehicle, identified as a red Blazer-type SUV, was registered to Thames. Agent Wash, who was personally acquainted with Thames and his vehicle, verified that it was Thames and Thames’s vehicle.
 

 ¶ 7. Because this was an ongoing investigation, Thames was not arrested at the time nor was the money retrieved. The substance given to Keel by Thames was turned over to Agent Coleman, who subsequently submitted it to the Mississippi Crime Laboratory for analysis.
 

 ¶ 8. Grady E. Downey, a forensic scientist with the Mississippi Crime Laboratory, testified that an analysis of the substance received from the MBN in reference to this case revealed that it contained cocaine base in the amount of 0.60 gram. This cocaine-base substance is commonly known as crack cocaine.
 

 ¶ 9. Thames was convicted on August 10, 2007, and sentenced to serve fifteen years in the custody of the MDOC. Thereafter, Thames filed a motion for a JNOV or, in the alternative, a motion for a new trial, which was denied. Aggrieved, Thames appeals.
 

 ANALYSIS
 

 I. WHETHER THE JURY VERDICT WAS THE RESULT OF BIAS AND PASSION AND IS CONTRARY TO THE CREDIBLE EVIDENCE AND SUFFICIENCY OF THE EVIDENCE.
 

 ¶ 10. Thames contends that there was insufficient evidence presented to prove the sale of cocaine beyond a reasonable doubt, and the verdict was against the overwhelming weight of the evidence. Thames argues that: (1) he did not possess the intent to participate in a sale; (2) Keel admitted she made the buy from WTieaton; and (3) the jury instructions provided the jury no real guidance on the lesser-included offense of possession. This Court has stated that:
 

 When reviewing the denial of a motion for new trial based on an objection to the weight of the evidence, this Court will only reverse a verdict when it is so
 
 *1183
 
 contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.
 
 Bush v. State,
 
 895 So.2d 836, 844(¶ 18) (Miss.2005). In making our determination, this Court is required to Anew the evidence in the light most favorable to the verdict; we will grant a new trial “only in exceptional cases in which the evidence preponderates heavily against the verdict.”
 
 Id.
 
 However, in considering whether the evidence is legally sufficient to sustain a conviction in the face of a motion for [a] JNOV, our inquiry is “whether the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.’ ”
 
 Id.
 
 at 843(¶ 16) (quoting
 
 Carr v. State,
 
 208 So.2d 886, 889 (Miss.1968)). The critical question in dealing -with such an issue is whether, “after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.”
 
 Id.
 
 We will deem the evidence sufficient if the evidence against the defendant is such that “reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense.”
 
 Id.
 

 Dixon v. State,
 
 953 So.2d 1117, 1121(¶ 13) (Miss.Ct.App.2006).
 

 ¶ 11. In this case, Thames was indicted for the sale of cocaine, which required the State to prove that Thames did willfully, unlawfully, feloniously, and knovringly sell and deliver a controlled substance in violation of Mississippi Code Annotated section 41-29-139(a)(l). Thames testified that he was in fact the man depicted in the video recording giving Keel what was identified as crack cocaine in a paper towel and receiving $100 in return. Viewing the evidence in the light most favorable to the prosecution, the video recording and testimony of both Keel and Thames are sufficient evidence of the sale of cocaine.
 

 ¶ 12. Next, Thames contends that he was only delivering the drugs to Keel, who admitted making the buy from Whea-ton. Thames asserts that he did not possess the intent to sell, but he was merely the errand runner and not the real drug seller. “[Substantial knovring participation in the consummation of a sale or in arranging for the sale may render one guilty of the illegal sale of unlawful controlled substances within [Mississippi Code Annotated] [s]eetion 41-29-139. One who aids and abets another, in such a context is an accessory before the fact and is guilty as a principal.”
 
 Williams v. State,
 
 463 So.2d 1064, 1066 (Miss.1985). Although Thames was delivering drugs for Wheaton, he knew that he was to give drugs to Keel in exchange for money. Therefore, his mere participation as a runner gives rise to a knowing participation in the sale of drugs, thus, making him guilty of the sale of an illegal controlled substance. Again, the video recording and testimony of both Keel and Thames are sufficient evidence of the sale of cocaine.
 

 ¶ 13. Thames also contends that even if we find evidence sufficient to support the verdict and he is not entitled to an acquittal as a matter of law, we should grant him a new trial, as the verdict is against the overwhelming weight of the evidence. We disagree. The evidence indicates that Thames delivered drugs to Keel and received money in exchange for the drugs. Thames testified that he was the man depicted in the video recording which shows the exchange of money for drugs between Thames and Keel. Examining the evidence in the light consistent ■with the verdict, we do not find that allow
 
 *1184
 
 ing the verdict to stand sanctions an unconscionable injustice. Therefore, this issue is without merit.
 

 ¶ 14. Next, Thames also asserts that although instruction D-4 was given, which might be considered a lesser-inelud-ed-offense instruction, instruction S-l, the elements instructions, and D-5, the form of the verdict instruction, did not provide real guidance on the lesser-included offense of possession.
 

 ¶ 15. Jury instructions are to be read as a whole rather than in isolation.
 
 Burton v. Barnett,
 
 615 So.2d 580, 583 (Miss.1993). If after doing so, the totality of the instructions fairly and accurately state the law and facts, this Court will not find error.
 
 Id.
 
 “When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.”
 
 Wilkerson v. State,
 
 731 So.2d 1173, 1180(¶ 25) (Miss.1998). Instruction D-4, which was given, states:
 

 The Court instructs the jury that if the jury finds a reasonable doubt that the Defendant did not sale cocaine but did, in fact, possess cocaine on February 15, 2006, then, in that event, the jury should find the Defendant guilty of possession of cocaine.
 

 Instruction S-l, which was given, provides:
 

 The Court instructs the Jury that if you believe from the evidence in this case beyond a reasonable doubt that at the time and place charged in the indictment and testified about, that the Defendant, Virty Lee Thames, did willfully, unlawfully, feloniously and knowingly sell and deliver to Donna Keel for the sum of $100.00, a Schedule II controlled substance, namely cocaine, then it is your duty to find the Defendant guilty as charged.
 

 Instruction D-5, which was given, states:
 

 Virty Lee Thames has been charged with sale of cocaine. If you find from the evidence in this case beyond a reasonable doubt that:
 

 1. Virty Lee Thames, on or about February 15, 2006, in Newton County, Mississippi
 

 2. Knowingly, and intentionally sold
 

 3. Cocaine and
 

 4. Virty Lee Thames knew that it was cocaine then you shall find the Defendant guilty as charged.
 

 If the prosecution has failed to prove any one or more of the above listed elements beyond a reasonable doubt, then you shall find Virty Lee Thames not guilty.
 

 ¶ 16. We find that instruction S-l is an accurate statement of the law. Instruction S-l lists the elements of the offense of sale of cocaine. Instruction D-4 did inform the jury that it could convict Thames of the lesser-included offense of possession. While it is true that D-4 does not define possession, the burden was upon Thames to offer a proper jury instruction defining possession. Instruction D-5 informs the jury that if it finds the State has not proven the elements of the offense of sale of cocaine beyond a reasonable doubt, then it should find Thames not' guilty. Our supreme court has previously held that a defendant is allowed to give “an instruction not only on the offense charged, but also on a lesser-included offense, an inferior offense, or an attempt to commit the offense without the charge being specifically stated in the indictment.”
 
 Mitchell v. State,
 
 788 So.2d 853, 857(¶ 12) (Miss.Ct. App.2001). There is no indication in the record before this Court that Thames offered any instruction which defined for the jury the lesser-included offense of possession. The trial court refused only one defense instruction and that instruction did
 
 *1185
 
 not relate to possession. Thus, this issue is without merit.
 

 II. WHETHER TRIAL COUNSEL’S PERFORMANCE REPRESENTS INEFFECTIVE ASSISTANCE OF COUNSEL.
 

 ¶ 17. Thames contends that defense counsel’s performance was deficient prior to and at trial. Thames asserts twelve reasons that counsel’s performance should be considered ineffective: (1) the dual representation of Thames and Wheaton was prejudicial to his case; (2) the defense counsel’s voir dire examination of the veni-re was very weak and ineffective; (3) the defense counsel failed to make objections as the State asked several leading questions and extracted hearsay and speculative testimony from State witnesses; (4) defense counsel refused to interview four disinterested witnesses that would be vital to Thames’s defense; (5) defense counsel failed to object when Keel identified and authenticated the video recording without laying a proper foundation; (6) defense counsel failed to make voir dire inquiry and lay the necessary foundation to authenticate the recording; (7) defense counsel failed to object to the admission of the audio and video recording into evidence; (8) defense counsel failed to question Keel regarding her past criminal history and the compensation she received for her participation in the drug buy; (9) defense counsel declined to conduct voir dire of the State’s proffered expert witness; (10) defense counsel failed to make a motion for a directed verdict at the close of the State’s case; (11) defense counsel failed to insure the jury was properly instructed as to the form of the verdict; and (12) defense counsel failed to object to Thames’s sentence, which Thames contends was based on the court’s obvious assumption that the conviction was for the sale of cocaine and not the lesser-included offense of possession.
 

 ¶ 18. The applicable standard to determine a claim of ineffective assistance of counsel is found in
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on a claim of ineffective assistance of counsel, the defendant must prove counsel’s performance was deficient, and but for the deficiency in counsel’s performance, the outcome likely would have been different.
 
 Dixon,
 
 953 So.2d at 1123(¶ 20). “The adequacy of counsel’s performance, as to its deficiency and prejudicial effect, should be measured by a ‘totality of the circumstances.’ ”
 
 Taylor v. State,
 
 682 So.2d 359, 363 (Miss.1996). The test is to be applied to the overall performance of counsel.
 
 Bigner v. State,
 
 822 So.2d 342, 346(¶ 24) (Miss.Ct.App.2002). “There is a strong, yet rebuttable, presumption that the actions by the defense counsel were reasonable and strategic.”
 
 Taylor,
 
 682 So.2d at 363.
 

 a. Dual Representation
 

 ¶ 19. Counsel for Thames represented Wheaton. Thames asserts that because he and Wheaton possessed dissimilar interests, defense counsel’s dual representation of both him and Wheaton was an actual conflict of interest that was prejudicial to his defense. Thames contends that he was prejudiced because evidence that would have mitigated his sentence, would have been adverse to Wheaton; thus, mitigating evidence was not put on at trial.
 

 ¶ 20. This Court has previously held that:
 

 Joint representation of co-defendants does not result in a per se violation of the right to counsel. The reviewing court presumes that trial counsel’s conduct is within the wide range of reasonable conduct and that decisions made by counsel are strategic. Defense counsel
 
 *1186
 
 has an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial ... When defense counsel has breached his duty of loyalty by actively representing conflicting interests and the conflict of interest adversely affects his performance then prejudice is presumed. A criminal defendant who asserts ineffective assistance of counsel must make some showing of a possible conflict of interest or prejudice in order to justify reversal of a conviction.
 

 Holmes v. State,
 
 754 So.2d 529, 534(¶ 10) (Miss.Ct.App.1999) (internal citations and quotations omitted). “[Moreover], [i]n order to demonstrate a violation of his Sixth Amendment Rights, a defendant must establish that an actual conflict of interest affected his lawyer’s performance.”
 
 Brown v. State,
 
 798 So.2d 481, 500(¶ 40) (Miss.2001).
 

 ¶ 21. The record is silent as to whether there was a formal waiver of dual representation. Thames admits that he allowed Wheaton to pay a significant portion of counsel’s quoted fee to represent him. Thames had the option to seek alternative representation, but he failed to do so. Thames did not make any objections to trial counsel’s representation of Wheaton. Based on our review of the record, we cannot find any evidence of prejudice from the dual representation or that such dual representation was adverse to Thames at the time of trial.
 

 b.Voir dire Examination of Venire
 

 ¶ 22. Thames contends that defense counsel conducted a very weak and ineffective voir dire, which gave rise to ineffective assistance of counsel. “[Generally, the Fifth Circuit considers an attorney’s actions during voir dire to be a matter of trial strategy, which cannot be the basis for a claim of ineffective assistance of counsel unless counsel’s tactics are shown to be so ill chosen that it permeates the entire trial with obvious unfairness.”
 
 Harrell v. State,
 
 947 So.2d 309, 315(¶ 21) (Miss. 2007). There is no evidence to suggest that counsel’s performance during voir dire, so undermined the entire trial proceedings as to amount to an unfair trial. Additionally, Thames offers no evidence to show that counsel’s performance was so deficient that the outcome of the proceedings would have been different.
 

 c. Objections to Leading Questions and Hearsay
 

 ¶ 23. Thames argues that there were several instances during trial in which the State asked leading questions and extracted hearsay from the State’s witnesses without any objection by defense counsel. Defense counsel only objected twice during the trial proceedings to leading questions and hearsay. “[C]ounsel’s choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections falls within the ambit of trial strategy.”
 
 Bigner,
 
 822 So.2d at 346-47(¶ 24). Moreover, “leading questions ... will rarely create so distorted an evidentiary presentation as to deny the defendant a fair trial.”
 
 Anderson v. State,
 
 904 So.2d 973, 981(¶ 28) (Miss.2004). In this case, we find that the asking of leading questions and extraction of hearsay did not prejudice Thames’s case.
 

 d. Refusal to Interview Witnesses
 

 ¶ 24. Thames alleges that he suffered ineffective assistance of counsel because his attorney refused to interview four disinterested witnesses for purposes of them testifying at his sentencing hearing. Thames has failed to provide the identity of these disinterested witnesses or
 
 *1187
 
 make a proffer of their anticipated testimony. Absent a proffer, it is impossible for this Court to speculate what these witnesses might have added to the sentencing hearing.
 

 ¶25. In
 
 Wiggins v. Smith,
 
 539 U.S. 510, 533, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), the United States Supreme Court held that:
 

 Strickland
 
 does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing. Nor does
 
 Strickland
 
 require defense counsel to present mitigating evidence at sentencing in every case. Both conclusions would interfere with the “constitutionally protected independence of counsel” at the heart of
 
 Strickland.
 

 The Supreme Court based this conclusion “on the much more limited principle that ‘strategic choices made after less than complete investigation are reasonable’ only to the extent that ‘reasonable professional judgments support the limitations on investigation.’ A decision not to investigate thus ‘must be directly assessed for reasonableness in all the circumstances.’”
 
 Id.
 
 (quoting
 
 Strickland,
 
 466 U.S. at 689-91, 104 S.Ct. 2052) (internal citations omitted).
 

 ¶26. Thames had the opportunity to make the court aware that there were four witnesses available to testify on his behalf. After defense counsel made comments at sentencing, the court inquired if Thames desired to make any comments. Thames responded, “I would just ask for mercy.” Thames provided no affidavits as to the witnesses’ anticipated testimony. Without any additional information as to the identity of these witnesses and their testimony, we must presume that trial counsel’s decision was strategic. Thames has not demonstrated any prejudice by the failure to call these unidentified witnesses.
 

 e. Identification and Authentication of DVD
 

 ¶ 27. Thames argues that counsel’s failure to object when Keel was allowed to identify and authenticate the video recording without laying a proper foundation amounted to ineffective assistance of counsel. Although counsel’s fail'ure to make certain objections has been previously addressed in this opinion, with regard to the confidential informant being allowed to identify and authenticate the recording, we look to
 
 Griffin v. State,
 
 918 So.2d 882 (Miss.Ct.App.2006) and Mississippi Rule of Evidence 901(b)(1) for guidance on this issue.
 

 ¶ 28. “Under this Court’s standard of review, the admissibility of evidence rests within the discretion of the trial judge. Unless his judicial discretion is abused, this Court will not reverse his ruling. The same standards used in determining the admissibility of photographs are applicable to the admission of videotapes.”
 
 Griffin,
 
 918 So.2d at 884(¶ 9). “Mississippi Rule of Evidence 901(b)(1) provides that authentication can be accomplished by [the] testimony of a witness with knowledge that a matter is what it is claimed to be.”
 
 Id.
 
 at 885(¶ 9).
 

 ¶ 29. We find that the State satisfied its burden according to Mississippi Rule of Evidence 901(b)(1). The audio and video recording equipment was set up in Keel’s trailer. Keel, who participated in the sale as a confidential informant, possessed sufficient knowledge of the transaction that occurred on the recording. On direct examination, Keel described the location of both the audio and video recording and acknowledged that she was being recorded. Prior to trial, Keel had an opportunity to review the video recording. Keel stated that the video recording was a true and :accurate depiction of the transaction that
 
 *1188
 
 took place on February 15, 2006, between herself and Thames. Therefore, we find that the proper foundation was laid by the State.
 

 f. Failure to Cross-examine Confidential Informant
 

 ¶ 30. Thames argues that he received inadequate assistance of counsel when trial counsel failed to cross-examine Keel regarding her criminal history and compensation from the State for her cooperation. The Mississippi Supreme Court has stated that:
 

 [D]ecisions made at trial during cross-examination are tactical decisions, and this Court will not analyze these decisions in hindsight to find that certain questions should or should not have been asked of a witness. The general rule is that “an attorney’s decision to call certain witnesses and ask certain questions falls within the ambit of trial strategy and cannot give rise to an ineffective assistance of counsel claim.”
 

 Golden v. State,
 
 968 So.2d 378, 389(¶ 45) (Miss.2007) (quoting
 
 Turner v. State,
 
 953 So.2d 1063, 1073(¶ 36) (Miss.2007)). Thames presented no evidence to support this claim. We find that trial counsel’s decision not to question Keel regarding her criminal history and compensation was a tactical decision.
 

 g. Voir dire of Expert Witness
 

 ¶ 31. “[T]he decision whether to question a witness on their qualifications as an expert witness is a part of the attorney’s trial strategy.”
 
 Sanders v. State,
 
 825 So.2d 53, 58(¶ 10) (Miss.Ct.App. 2002). Thames asserts that defense counsel’s failure to conduct voir dire of the State’s proffered expert witness, forensic scientist Grady Downey, constituted ineffective assistance of counsel. Thames does not present supporting evidence to prove that had Downey been questioned, he would not qualify as an expert in the field, nor does Thames assert that he was prejudiced by counsel’s failure to voir dire Dow-ney. Based on Downey’s testimony, the trial court found that he was qualified as an expert in the field of forensic science. Thames presented no evidence to suggest that Downey was not qualified as an expert in the field. This issue is without merit.
 

 h.Failure to Make a Motion for a Directed Verdict
 

 ¶ 32. Thames contends that at the end of the State’s case-in-chief, defense counsel made a motion to dismiss the indictment and charges against Thames on the ground that the State failed to prove the essential allegations of the indictment. Thames asserts that defense counsel should have made a motion for a directed verdict. “Motions to dismiss, motions for JNOV, and motions for directed verdict all challenge the legal sufficiency of the evidence.”
 
 Wright v. State,
 
 958 So.2d 158, 168(¶ 27) (Miss.2007). “Motions for directed verdict challenge the legal sufficiency of the evidence and [appellate courts] will reverse only when the evidence is such that ‘reasonable and fair-minded jurors could only find the accused not guilty.’ ”
 
 Jaramillo v. State,
 
 950 So.2d 1104, 1107(¶ 9) (Miss.Ct.App.2007). “In considering a motion to dismiss, the trial judge should consider ‘the evidence fairly, as distinguished from in the light most favorable to the plaintiff,’ and the court should dismiss the case if it would find for the defendant.”
 
 Id.
 

 ¶ 33. Clearly, it appears that while Thames’s trial counsel did not use the term “directed verdict” in his request to the court, his motion had the same effect, because it went to the legal sufficiency and was understood by the trial judge, who
 
 *1189
 
 overruled the motion based on the legal sufficiency of the evidence.
 

 i. Failure to Instruct Jury as to Form of the Verdict
 

 ¶ 34. Thames requested and received a jury instruction on the lesser-included offense of possession of the controlled substance. However, he asserts that defense counsel’s failure to insure that the jury was properly instructed as to the form of the verdict, given the alternatives offered, amounted to ineffective assistance of counsel.
 

 ¶ 35. “[This Court] presume[s] that jurors follow the instructions of the court.”
 
 Stubbs v. State,
 
 878 So.2d 130, 137(¶19) (Miss.Ct.App.2004). “To presume otherwise would be to render the jury system inoperable.”
 
 Id.
 
 “Where there has been substantial compliance with the law, a jury’s verdict will not be reversed for mere want of form. Case law instructs that if the jury’s intent can be understood in a reasonably clear manner, there has been substantial compliance and there is no error.”
 
 Jordan v. State,
 
 912 So.2d 800, 814(¶35) (Miss.2005) (citing Miss.Code Ann. § 99-19-9 (Rev.2007)). “The basic test with reference to whether or not a verdict is sufficient as to form is whether or not it is an intelligent answer to the issues submitted to the jury and expressed so that the intent of the jury can be understood by the court.”
 
 Coles v. State,
 
 756 So.2d 12, 14(¶ 12) (Miss.Ct.App. 1999).
 

 ¶36. The jury was instructed that if they found the defendant guilty as charged in the indictment, the form of their verdict was to be as follows: “[w]e, the jury, find the defendant, Virty Lee Thames, [g]uilty as charged [sale of cocaine].” However, if the jury found Thames guilty of possession of cocaine in an amount of 0.60 gram, the form of the verdict should be as follows: “[w]e, the jury, find the defendant, Virty Lee Thames, guilty of possession of 0.60 gram of cocaine.” It is clear from the instructions given that the jury’s verdict was based on the instructions given, which were not deficient as to the form of the verdict. After reviewing the jury instructions given as a whole, we find that the jury was properly instructed on the form of the verdict as to the crime for which Thames was indicted, as well as the lesser-included offense of possession.
 

 j. Failure to Object to Conviction
 

 ¶ 37. Thames argues that he suffered ineffective assistance of counsel when defense counsel failed to object to his being sentenced on the court’s assumption that the conviction was for “sale of cocaine” and not the lesser-included offense of “possession.” Thames was convicted of the sale of cocaine. Pursuant to Mississippi Code Annotated section 41-29-139(b)(l) (Rev.2005), “one who violates subsection (a) of this section ... such person may, upon conviction, be imprisoned for not more than thirty (30) years.” Thames was sentenced to serve fifteen years in the custody of the MDOC. We find the sentence that Thames received was consistent with the jury’s verdict and within the statutory limits. In his petition, Thames has failed to demonstrate how counsel’s failure to object to the sentence, which was in accordance with the verdict and the statutory limits, amounted to deficient performance and could have resulted in a different outcome. Therefore, this issue is without merit.
 

 ¶38. There is no merit to any of the assignments of errors raised by Thames as being illustrative of ineffective assistance of counsel.
 

 III. WHETHER THE CUMULATIVE ERRORS RESULTED IN AN UNFAIR TRIAL.
 

 
 *1190
 
 ¶ 39. Having found no merit to any of the specific errors alleged by Thames, this Court can find no cumulative error.
 

 ¶ 40. THE JUDGMENT OF THE CIRCUIT COURT OF NEWTON COUNTY OF CONVICTION OF SALE OF COCAINE AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 LEE AND MYERS, P JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. MAXWELL, J., NOT PARTICIPATING.